**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     and | ) |
| | ) |
| KANSAS DEPARTMENT OF | ) |
| HEALTH AND ENVIRONMENT, | ) |
| ex rel STATE OF KANSAS, | ) |
| | ) |
|     v. | )   Civ. No. 04-CV-1064-MLB |
| | ) |
| COFFEYVILLE RESOURCES | ) |
| REFINING & MARKETING, LLC | ) |
| | ) |
| and | ) |
| | ) |
| COFFEYVILLE RESOURCES | ) |
| TERMINAL, LLC | ) |
| | ) |
|     Defendants. | ) |

## FIRST MATERIAL MODIFICATION TO CONSENT DECREE

WHEREAS on March 4, 2004, Plaintiff, the United States of America ("United States"),

on behalf of the Environmental Protection Agency ("EPA"), and Plaintiff Intervenor the State of

Kansas ("Kansas"), on behalf of Kansas Department of Health and Environment ("KDHE"),

(collectively "Plaintiffs") filed a complaint in this action against Coffeyville Resources Refining

& Marketing, LLC ("CRRM") and Coffeyville Resources Terminal, LLC ("CRT") and

simultaneously lodged a consent decree with this Court;

WHEREAS on July 13, 2004, this Court entered the consent decree (the "Consent

Decree") fully resolving the allegations in the complaint;

WHEREAS the Consent Decree requires CRRM to install certain pollution control technologies on its Fluid Catalytic Cracking Unit (FCCU) and to meet lower emission limits for NOx, SO2 and PM;

WHEREAS CRRM has claimed that a record flood of the Verdigris River on June 30/July 1, 2007 caused delays in CRRM's ability to timely install controls on its FCCU and thereby meet the lower emissions limits;

WHEREAS CRRM also claims that the delays caused by the flood constituted a force majeure event as that term is defined in the Consent Decree;

WHEREAS based on current information, the United States and KDHE dispute that the June 30/July 1, 2007, flood constitutes a force majeure event that delayed CRRM's ability to timely install controls on its FCCU and thereby meet the lower emissions limit required by the Consent Decree;

WHEREAS the United States and KDHE may seek stipulated penalties for CRRM's failure to install the controls and meet the final emission limits by the dates specified in the Consent Decree, if the delay was not caused by a force majeure event;

WHEREAS the United States and KDHE have the authority to compromise stipulated penalties under the Consent Decree;

WHEREAS CRRM, the United States and KDHE ("the Parties") have agreed to settle their dispute over CRRM's force majeure claim described above.  Under this settlement, the United States and KDHE will allow CRRM additional time to install the FCCU controls and meet lower emissions limits on the FCCU without the imposition of stipulated penalties under the Consent Decree in consideration for CRRM's agreement to install the controls by March 15,

2012, and undertake additional measures to achieve offsetting reductions of SO2, NOx, and PM from the FCCU and other emission sources at the refinery;

WHEREAS pursuant to Paragraph 147 of the Consent Decree, this First Material Modification to the Consent Decree ("Modification") is filed with the Court to implement the Parties' settlement of CRRM's force majeure claim described above;

WHEREAS the Parties agree that these modifications are in the best interest of the public and that entry of this Modification without litigation is appropriate;

WHEREAS the Parties recognize, and the Court by entering this Modification finds, that it has been negotiated at arms length and in good faith and that this Modification is fair, reasonable, and in the public interest;

NOW THEREFORE, before the taking of any testimony, without adjudication of any issue of fact or law, and upon the consent and agreement of the Parties, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

## AMENDED, RESTATED, AND ADDED SECTIONS

1.      The Consent Decree shall remain in full force and effect in accordance with its terms, except that:

a.      all references to "December 31, 2010" in Paragraphs 23, 42, 44, 103.A, and 104.A, are replaced with "March 15, 2012."

b.      Paragraph 46 shall be changed to read:

Between two (2) and six (6) months after the PM limit in Paragraph 44 becomes effective, CRRM shall conduct the first stack test to demonstrate compliance with the PM emission limits in this Consent Decree.  CRRM shall conduct two additional stack tests at the FCCU to demonstrate compliance with the PM emissions limit, one and

three years after the first stack test.  Stack test results
shall be submitted to EPA and KDHE sixty (60) days
after completion of the test.

2.      The project schedule submitted by CRRM on June 1, 2008, pursuant to Paragraphs

24 and 43, is modified by this Agreement and is not enforceable under the Consent Decree or

subject to the stipulated penalty provisions in Paragraphs 103.D. and 104.D.

3.      The Consent Decree shall remain in full force and effect in accordance with its

terms, except that the following new paragraphs 150-157 set forth below shall be incorporated

therein and enforceable thereunder:

a.      A new Paragraph 150 shall read as follows:

CRRM shall offset emissions of $SO_2$, NOx and PM
in excess of the emission limits in Paragraphs 23,
42, and 44, respectively, that occur after December
31, 2010 and the date of installation of FCCU air
pollution controls on March 15, 2012, as described
in Paragraphs 151-157 below:

b.      A new Paragraph 151 shall read as follows:

Beginning January 1, 2011 through March 15,
2012, CRRM shall add at least an average of 718
pounds per day of $SO_2$ Reducing Catalyst Additive
(Grace Davision Super De-SOx, Intercat Super
SOXGETTER, Albemarle KDSOX/SOxDown or
other approved additive).  CRRM may add less than
an average of 718 pounds per day of $SO_2$ Reducing
Catalyst Additive if CRRM's FCCU $SO_2$ emissions
comply with an emission limit of 25 ppmvd at 0%
O2 on a 90 day rolling average basis including
periods of Startup, Shutdown and Malfunction and
an emission limit of 50 ppmvd at 0% O2 on a 7 day
rolling average basis excluding periods of Startup,
Shutdown and Malfunction provided that during
such periods CRRM implements good air pollution
control practices to minimize SO2 emissions.

c.      A new Paragraph 152 shall read as follows:

To achieve offsetting reductions of NOx emissions, CRRM shall install NOx controls and comply with the NOx emissions limits for boiler #2 [FH0028], and boiler #3 [FH0029] in accordance with the following table:

| Unit | NOx Emission Limitation | Averaging Period | Deadline |
|---|---|---|---|
| Boiler #2 [FH0028] | 0.047 lbs NOx/MMBtu | 3-hour | June 30, 2010 |
| Boiler #3 [FH0029] | 0.047 lbs NOx/MMBtu | 3-hour | June 30, 2010 |

.

    d.    A new Paragraph 153 shall read as follows:

To achieve offsetting reductions of $SO_2$, NOx and PM emissions, CRRM shall restrict coal usage in the coal steam boiler [FH0027] as set forth in the following table:

| Dates | Limit |
|---|---|
| April 1, 2010 – December 30, 2012 | 0 tons per year |
| December 31, 2012 – October 25, 2016 | 5,000 tons per year |
| Beginning October 26, 2016 | Permit Limit |

CRRM may further restrict coal usage beyond the limits described in the table to achieve additional offsetting reductions of PM.

    e.    A new Paragraph 154 shall read as follows:

    A.    CRRM shall conduct a stack test on the FCCU in accordance with the Protocol attached as Appendix 7 by July 26, 2010, and within sixty (60) days thereof submit a report of the test results to EPA and KDHE.

    B.    Required PM Emissions Offset

    1.    CRRM shall offset PM emissions in excess of the final limit in Paragraph 44 that will occur between January 1, 2011, and the date of installation of the FCCU controls (hereinafter the "Excess PM Emissions") by reducing PM emissions by at least an equal amount ("Required PM Emissions Offset").

    2.    Calculation of the Excess PM Emissions

    a.    Excess PM Emissions shall be calculated based on the stack test performed pursuant to Paragraph A

above and in accordance with the methodology set forth in Appendix 6.

b.    CRRM shall calculate and submit a report to EPA and KDHE containing the calculation of the Excess PM Emissions within (60) sixty days after the stack test has been conducted pursuant to Paragraph A. above.

c.    EPA, in consultation with KDHE, shall notify CRRM that it either agrees with the submitted calculation of the Excess PM Emissions, disagrees with the calculation, or needs further information to be provided by CRRM.

3.    CRRM shall achieve the Required PM Emissions Offset by either:

a.    December 31, 2013, through the restrictions on coal firing in accordance with or beyond those set forth in Paragraph 153 and/or by limiting emissions of PM from the FCCU.  If CRRM elects to proceed under this provision, it shall so notify EPA and KDHE by April 30, 2012, and provide EPA and KDHE with the FCCU PM emission limit (pounds of PM per 1000 pounds of coke burned on a 3 hour average basis) and/or any coal restrictions beyond those set forth in Paragraph 153 which it intends to use to achieve the Required PM Emissions Offset. This PM emission limit and any coal restrictions beyond those set forth in Paragraph 153 shall be enforceable under this Consent Decree as interim limits until December 31, 2013.  After CRRM specifies a FCCU PM limit, and/or any coal restrictions beyond those set forth in Paragraph 153, it may apply the PM emissions reductions achieved by operation of the FCCU at that limit and/or through the coal restrictions beyond those specified in Paragraph 153 to the Required PM Emissions Offset.  PM reductions from restrictions on coal usage in accordance with Paragraph 153 may be applied against the Required PM Emissions Offset from the effective date of the limit; or

b.  December 31, 2016, through the restrictions on coal firing in accordance with or beyond those set forth in Paragraph 153 and/or by limiting emissions of PM from the FCCU.  If CRRM elects to achieve the Required PM Emissions Offset under this provision, it shall so notify EPA and KDHE by December 31, 2013, and provide EPA and KDHE with the FCCU PM emission limit (pounds of PM per 1000 pounds of coke burned on a 3 hour average basis) and/or any coal restrictions in accordance with or beyond those set forth in Paragraph 153 which it intends to use to achieve the Required PM Emissions Offset by December 31, 2016.  After CRRM specifies a FCCU PM limit and/or any coal restrictions beyond those set forth in Paragraph 153, it may apply the PM emissions reductions achieved by operation of the FCCU at that limit or through the coal restrictions beyond those specified in Paragraph 153 to the Required PM Emissions Offset.  PM reductions from restrictions on coal usage in accordance with Paragraph 153 may be applied against the Required PM Emissions Offset from the effective date of the limit.  These specified PM FCCU emissions limit and coal restrictions shall become permanent and shall be incorporated into federally enforceable permit conditions (other than Title V) and the facility's Title V permit pursuant to Paragraph 157 below.

4.  The quantity of PM emission offset achieved through FCCU emission limits and restrictions on coal usage shall be calculated in accordance with the methodologies set forth in Appendix 6.

C.  Within thirty (30) days of achieving the Required PM Emissions Offset, CRRM shall submit to EPA and KDHE a report stating that the Required PM Emissions Offset has been achieved and provide documentation verifying calculation of the offset in accordance with the methodologies set forth in Appendix 6.  Within sixty (60) days of receiving the report, EPA and KDHE shall notify CRRM that they either agree that the offset has been obtained, disagree that it has been obtained, or need further information to be provided by CRRM.  In the event that EPA and KDHE request further information, EPA and KDHE's response to CRRM's claim

that the Required PM Emissions Offset has been achieved shall be made within thirty (30) days of receiving the requested information from CRRM.

f.      A new Paragraph 155 shall read as follows:

If CRRM fails to meet any deadline in Paragraphs 150-154, the United States and KDHE may seek stipulated penalties in accordance with Paragraphs 109.A and 112.A. of the Consent Decree, as applicable.

g.      A new Paragraph 156 shall read as follows:

Within six months after completing the obligations in Paragraphs 150-154, CRRM shall prepare a report describing its completion of the actions required in Paragraphs 150-154.  CRRM shall certify the report in accordance with Paragraph 97 of the Consent Decree and submit it to EPA and KDHE in accordance with Paragraph 145 of the Consent Decree.

h.      A new Paragraph 157 shall read as follows:

By no later than six (6) months after the effective date of the final emission limits in Paragraphs 152 and 154.B.3.b (if applicable), CRRM shall submit a construction permit application to KDHE to incorporate the final emission limits from those provisions into federally enforceable non-title V permits conditions.  Within six months after the construction permit is issued, CRRM will submit an application to incorporate those limits into the refinery's Title V permit.

4.      Provided that CRRM materially complies with the obligations to meet the requirements of Paragraphs 23, 42, 44, and new Paragraphs 150-154, or remedies a material failure to do so and pays any stipulated penalties due as a result of such material failure, the United States and KDHE agree to waive stipulated penalties for CRRM's failure to meet the original Consent Decree deadlines for the FCCU set forth in Paragraphs 23, 24, 42, 43, and 44 of the Consent Decree.

## SIGNATORIES

5.      Each of the undersigned representatives certifies that he or she is fully authorized to enter into the Modification to Consent Decree on behalf of such parties, and to execute and to bind such Parties to this First consent Decree Amendment.  This Modification to Consent Decree may be signed in counterparts.

Before the taking of any testimony, without adjudication of any issue of fact or law, and upon the consent and agreement of the Parties, it is:  ORDERED, ADJUDGED and DECREED that this Modification to Consent Decree is hereby approved and entered as a final order of this Court.

IT IS SO ORDERED.

Dated this _____ day of _____, 2010.


_____
UNITED STATES DISTRICT JUDGE

WE HEREBY CONSENT to the entry of the Modification to Consent Decree entered in the matter of United States Of America, and Kansas Department of Health and Environment, ex rel State of Kansas v. Coffeyville Resources Refining & Marketing, LLC and Coffeyville Resources Terminal, LLC., Civ. No. 04-CV-1064-MLB.

**FOR PLAINTIFF THE UNITED STATES OF AMERICA:**

Date: 5/7/10

IGNACIA S. MORENO
United States Department of Justice
Environment and Natural Resources Division

Date: 6/8/10

ELIZABETH L. LOEB
Environment and Natural Resources Division
Environmental Enforcement Section
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 616-8916
Elizabeth.Loeb@usdoj.gov
Member of the New York Bar.

LANNY D. WELCH
United States Attorney
District of Kansas

/s/ Emily Metzger
EMILY METZGER
Assistant United States Attorney
301 North Main Street
Wichita, Kansas 67212
(316) 269-6481
Emily.Metzger@usdoj.gov
Kansas Supreme Court Number 10750

Date: Maf 19, 2010

_____
ADAM M. KUSHNER
Director, Office of Civil Enforcement
Office of Enforcement and Compliance
Assurance
U.S. Environmental Protection Agency

Date: 5/19/10

_____
MELANIE SHEPHERDSON
Attorney, Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance
Assurance
U.S. Environmental Protection Agency

Date: 4/23/10

KARL BROOKS
Regional Administrator
U.S. Environmental Protection Agency
Region VII

Date: 3/31/10

DAVID COZAD
Regional Counsel
U.S. Environmental Protection Agency
Region VII

Date: 3/31/10

SARAH T. LaBODA
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region VII

First Material Modification to Consent Decree
United States and KDHE v. Coffeyville Resources, Refining & Marketing et. al
**Page 13.**

WE HEREBY CONSENT to the entry of the Modification to Consent Decree entered in

the matter of United States Of America, and Kansas Department of Health and Environment, ex

rel State of Kansas v. Coffeyville Resources Refining & Marketing, LLC and Coffeyville

Resources Terminal, LLC, Civ. No. 04-CV-1064-MLB.

**FOR PLAINTIFF KANSAS**
**DEPARTMENT OF HEALTH AND**
**ENVIRONMENT:**

Date: 03 26 10

RODERICK L. BREMBY
Secretary
Kansas Department of Health and
Environment

Date: 03 26 10

JOHN MITCHELL,
Director
Division of Environment

Date: 3- 26 -10

YVONNE ANDERSON
Chief Legal Counsel
Kansas Department of Health and
 Environment
Charles Curtis State Office Building
1000 S.W. Jackson, Suite 560
Topeka, Kansas 66612
(785) 296-5334
yanderso@kdhe.state.ks.us
KS Bar No. 12636

WE HEREBY CONSENT to the entry of the Modification to Consent Decree entered in the

matter of United States Of America, and Kansas Department of Health and Environment, ex rel

State of Kansas v. Coffeyville Resources Refining & Marketing, LLC and Coffeyville Resources

Terminal, LLC, Civ. No. 04-CV-1064-MLB.

**FOR DEFENDANT COFFEYVILLE
RESOURCES REFINING &
MARKETING, LLC, et al.:**

Date: 4-8-10

Stanley A. Riemann
Chief Operating Officer

Date: 4/8/10

LeAnn Johnson-Koch
DLA Piper LLP (US)
500 8th Street, NW
Washington, DC 20004
(202) 799-4380
Counsel to CRRM and CRT

# APPENDIX 6

# Appendix 6

# Calculation methodologies for Excess PM Emissions and Required PM Emissions Offsets

**The following procedures will be used for calculating the Excess PM Emissions:**

**FCCU**

FCCU Baseline Variables (11/15/08-11/14/09):
A = Coke Burn during FCCU Baseline Period ≈ 20.256 thousand pounds (Mlb) of coke per hour
B = Required FCCU PM emission rate = 0.5 pounds of PM per 1,000 pounds of coke burned on
   a 3-hour average basis

Required FCCU Daily PM Emission Rate

$$C = A \; \frac{\text{Mlb Coke}}{\text{hr}} \; \times B \; \frac{\text{lb PM}}{\text{Mlb Coke Burn}} \; \times \; \frac{1 \text{ ton}}{2,000 \text{ lb}} \; \times \frac{24 \text{ hr}}{1 \text{ day}} \; \approx 0.122 \frac{\text{ton PM}}{\text{day}}$$

Actual FCCU PM Coke Based Emission Rate from 2010 Stack Testing

$$D = \text{PM emission rate from the average of the 3 FCCU stack test runs} = \text{TBD} \; \frac{\text{lb PM}}{\text{M lb Coke Burn}}$$

Actual FCCU Daily PM Emission Rate

$$E = A \; \frac{\text{Mlb Coke}}{\text{hr}} \; \times D \; \frac{\text{lb PM}}{\text{Mlb Coke Burn}} \; \times \; \frac{1 \text{ ton}}{2,000 \text{ lb}} \; \times \frac{24 \text{ hr}}{1 \text{ day}} \; \approx \text{TBD} \frac{\text{ton PM}}{\text{day}}$$

PM Emissions in Excess of the Final Limit (1/1/2011 – 3/15/2012)
F = Number of days until FCCU shutdown for installation of controls
   = 1/1/2011 to 3/15/2012 = 439 days

$$G = F \text{ days} \times (E \; \frac{\text{ton PM}}{\text{day}} \; - \; C \; \frac{\text{ton PM}}{\text{day}} \; ) = \text{TBD tons PM in Excess of the Final Limit}$$

The Excess PM Emissions shall be equal to G.

A-1

**The following procedures will be used for calculating the Required PM Emissions Offset through reductions of PM from restricting or eliminating coal and limiting PM emissions from the FCCU**

**Boiler #1**
**Boiler #1 Firing Coal**
Baseline Variables (11/15/07-11/14/09):

$$H = \text{Coal Usage during Baseline Period} \approx 8,320 \; \frac{\text{tons Coal}}{\text{yr}} \times \frac{1 \, \text{yr}}{365 \, \text{days}} \approx 22.79 \; \frac{\text{tons Coal}}{\text{day}}$$

Coal Fired Boiler PM Emission Rate (combusting coal)
I = Boiler #1 Cyclone PM Control efficiency = 70 %
J = Boiler #1 Baghouse PM Control efficiency = 99 %

$$K = \text{Boiler \#1 Uncontrolled PM emission factor (AP-42 Table 1.1-4)} = 66 \; \frac{\text{lb PM}}{\text{ton Coal}}$$

$$L = \text{Boiler \#1 Controlled PM emission factor} = K \; \frac{\text{lb PM}}{\text{ton Coal}} \times (1-I) \times (1-J) \approx 0.198 \; \frac{\text{lb PM}}{\text{ton Coal}}$$

Coal Fired Boiler PM Emissions during Baseline Period (11/15/2007-11/14/2009)

$$M \approx H \; \frac{\text{tons Coal}}{\text{day}} \times L \; \frac{\text{lb PM}}{\text{ton Coal}} \times \frac{1 \, \text{ton}}{2,000 \, \text{lb}}$$

$$\approx 22.79 \; \frac{\text{tons Coal}}{\text{day}} \times 0.198 \; \frac{\text{lb PM}}{\text{ton Coal}} \times \frac{1 \, \text{ton}}{2,000 \, \text{lb}} \approx 0.00226 \; \frac{\text{ton PM}}{\text{day}}$$

PM Reductions from Restricting Coal to Zero Coal Firing (4/1/2010-12/30/2012)

$$N = \text{Coal Usage} \; 0 \; \frac{\text{tons Coal}}{\text{yr}} \times \frac{1 \, \text{yr}}{365 \, \text{days}} = 0 \; \frac{\text{tons Coal}}{\text{day}}$$

$$O = N \; \frac{\text{tons Coal}}{\text{day}} \times L \; \frac{\text{lb PM}}{\text{ton Coal}} \times \frac{1 \, \text{ton}}{2,000 \, \text{lb}} = 0 \; \frac{\text{ton PM}}{\text{day}}$$

P = Number of days of Zero Coal Firing
= 4/1/2010 to 12/30/2012 = 1,004 days

$$Q \approx P \, \text{days} \times (M \; \frac{\text{ton PM}}{\text{day}} - O \; \frac{\text{ton PM}}{\text{day}}) \approx 2.27 \; \text{tons PM Reductions}$$

A-2

<u>Any variations in coal restriction to achieve the Required PM Emissions Offset by 12/31/2013 shall be in accordance with Paragraph 154 B.3.</u>

<u>PM Reductions from Restricting Coal to 5,000 TPY Coal Firing (12/31/2012 – 12/31/2016)</u>

$R = \text{Coal Usage } 5{,}000 \dfrac{\text{tons Coal}}{\text{yr}} \times \dfrac{1 \text{ yr}}{365 \text{ days}} \approx 13.70 \dfrac{\text{tons Coal}}{\text{day}}$

$S = R \dfrac{\text{tons Coal}}{\text{day}} \times L \dfrac{\text{lb PM}}{\text{ton Coal}} \times \dfrac{1 \text{ ton}}{2{,}000 \text{ lb}} \approx 0.001356 \dfrac{\text{ton PM}}{\text{day}}$

$T1 = $ Number of days of 5,000 TPY Coal Firing
$\quad = 12/31/2012 \text{ to } 12/31/2013 = 365 \text{ days}$

$U1 = T1 \text{ days} \times (M \dfrac{\text{ton PM}}{\text{day}} - S \dfrac{\text{ton PM}}{\text{day}}) = 0.330 \text{ tons PM Reductions}$

$T2 = $ Number of days of 5,000 TPY Coal Firing
$\quad = 12/31/2012 \text{ to } 12/31/2016 = 1{,}461 \text{ days}$

$U2 = T2 \text{ days} \times (M \dfrac{\text{ton PM}}{\text{day}} - S \dfrac{\text{ton PM}}{\text{day}}) = 1.32 \text{ tons PM Reductions}$

## **Boiler #1 Incremental Increase in PM emissions from Firing Refinery Fuel Gas**

<u>Boiler #1 Baseline Heat Input Firing Refinery Fuel Gas (11/15/07-11/14/09):</u>

$V = \text{Boiler \#1 Baseline Heat Input Firing Refinery Fuel Gas} \approx 94.83 \dfrac{\text{MMBtu}}{\text{hr}}$

<u>Boiler #1 Baseline Heat Input Firing Coal (11/15/07-11/14/09):</u>

$W = 8{,}320 \dfrac{\text{tons Coal}}{\text{yr}} \times \dfrac{2{,}000 \text{ lb Coal}}{\text{ton Coal}} \times \dfrac{\text{yr}}{8{,}760 \text{ hr}} \times \dfrac{12{,}442 \text{ Btu}}{\text{lb Coal}} \times \dfrac{\text{MMBtu}}{1{,}000{,}000 \text{ Btu}}$

$\approx 23.63 \dfrac{\text{MMBtu}}{\text{hr}}$

<u>Boiler #1 Baseline Heat Input Firing Refinery Fuel Gas and Coal</u>

$X = V \dfrac{\text{MMBtu}}{\text{hr}} + W \dfrac{\text{MMBtu}}{\text{hr}} \approx 118.47 \dfrac{\text{MMBtu}}{\text{hr}}$

A-3

Boiler #1 Heat Input Firing Refinery Fuel Gas and Restricting Coal to Zero Coal Firing
(4/1/2010-12/30/2012)

$$Y = 118.47 \; \frac{MMBtu}{hr} \; \text{from Fuel Gas}$$

Boiler #1 Heat Input Firing Refinery Fuel Gas and Restricting Coal to 5,000 TPY Coal Firing
(Beginning 12/31/2012)

$$Z = 5,000 \; \frac{\text{tons Coal}}{yr} \; x \; \frac{2,000 \, \text{lb Coal}}{\text{ton Coal}} \; x \; \frac{yr}{8,760 \, hr} \; x \; \frac{12,442 \, Btu}{\text{lb Coal}} \; x \; \frac{MMBtu}{1,000,000 \, Btu}$$

$$= 14.20 \frac{MMBtu}{hr} \; \text{from Coal}$$

$$AA = 118.47 \; \frac{MMBtu}{hr} \; - \; Z \; \frac{MMBtu}{hr} \approx 104.27 \; \frac{MMBtu}{hr} \; \text{from Fuel Gas}$$

Boiler #1 Baseline PM emissions Firing Refinery Fuel Gas

$$AB = \text{Boiler #1 PM Emission Factor Firing Fuel Gas (AP-42 Table 1.4-2)} \approx 0.0075 \; \frac{\text{lb PM}}{MMBtu}$$

$$AC = AB \; \frac{\text{lb PM}}{MMBtu} \; x \; V \; \frac{MMBtu}{hr} \; x \frac{24 \, hr}{day} \; x \; \frac{1 \, ton}{2,000 \, lb} \approx 0.00848 \; \frac{\text{ton PM}}{day}$$

Boiler #1 PM emissions Firing Refinery Fuel Gas at 0 TPY Coal Limit

$$AD = AB \; \frac{\text{lb PM}}{MMBtu} \; x \; Y \; \frac{MMBtu}{hr} \; x \frac{24 \, hr}{day} \; x \; \frac{1 \, ton}{2,000 \, lb} \approx 0.01059 \; \frac{\text{ton PM}}{day}$$

Boiler #1 PM emissions Firing Refinery Fuel Gas at 5,000 TPY Coal Limit

$$AE = AB \; \frac{\text{lb PM}}{MMBtu} \; x \; AA \; \frac{MMBtu}{hr} \; x \; \frac{24 \, hr}{day} \; x \; \frac{1 \, ton}{2,000 \, lb} \approx 0.00932 \; \frac{\text{ton PM}}{day}$$

Incremental PM emission increases from Firing additional Refinery Fuel Gas in Boiler #1 Above
Baseline Level while Restricting Coal to Zero Coal Firing (4/1/2010-12/30/2012)

$$AF = P \, days \; x \; (AD \; \frac{\text{ton PM}}{day} \; - \; AC \; \frac{\text{ton PM}}{day} \; ) \approx 2.12 \; \text{tons PM Incremental Increase}$$

A-4

Incremental PM emission increases from Firing additional Refinery Fuel Gas in Boiler #1 Above Baseline Level while Restricting Coal to 5,000 TPY Coal Firing (12/31/2012 - 12/31/2016))

$AG1 = T1$ days x (AE $\frac{\text{ton PM}}{\text{day}}$ - AC $\frac{\text{ton PM}}{\text{day}}$ ) $\approx 0.306$ tons PM Incremental Increase

$AG2 = T2$ days x (AE $\frac{\text{ton PM}}{\text{day}}$ - AC $\frac{\text{ton PM}}{\text{day}}$ ) $\approx 1.227$ tons PM Incremental Increase

**The following procedures will be used for calculating the Required PM Emissions Offset through reductions of PM by limiting PM emissions from the FCCU;**

As previously identified
Actual FCCU PM Coke Based Emission Rate from 2010 Stack Testing (1/1/2011 – 3/15/2012)

$D$ = PM emission rate from the average of the 3 FCCU stack test runs = TBD $\frac{\text{lb PM}}{\text{M lb Coke Burn}}$

Required FCCU Daily PM Emission Rate (beginning 1/1/2011)

$C = A \frac{\text{Mlb Coke}}{\text{hr}}$ x $B \frac{\text{lb PM}}{\text{Mlb Coke Burn}}$ x $\frac{1 \text{ ton}}{2,000 \text{ lb}}$ x $\frac{24 \text{ hr}}{\text{day}} \approx 0.122 \frac{\text{ton PM}}{\text{day}}$

Limiting FCCU PM Emission Rate (Beginning 3/15/2012)
$AH$ = Lower PM emission limit selected by CRRM to be applicable post installation of FCCU controls per paragraph 154 B.3..   = TBD $\frac{\text{lb PM}}{\text{Mlb Coke Burn}}$

Reduced FCCU Daily PM Emission Rate based on Lower PM emission Limit (beginning 3/15/2012)

$AI = A \frac{\text{Mlb Coke}}{\text{hr}}$ x $AH \frac{\text{lb PM}}{\text{Mlb Coke Burn}}$ x $\frac{1 \text{ ton}}{2,000 \text{ lb}}$ x $\frac{24 \text{ hr}}{\text{day}}$ $\approx$ TBD $\frac{\text{ton PM}}{\text{day}}$

PM Emission Reductions (from 3/15/2012 to 12/31/2016)
$AJ$ = Number of days subject to Lower PM Emission Limit = 3/15/2012 to 12/31/2016 = 1,752 days

$AK = AJ$ days x (AI $\frac{\text{ton PM}}{\text{day}}$ - C $\frac{\text{ton PM}}{\text{day}}$ ) = TBD tons PM reductions from 3/15/2012 to 12/31/2016

A-5

PM Emission Reductions (from 3/15/2012 to 12/31/2013)
AL = Number of days subject to Lower PM Emission Limit = 3/15/2012 to 12/31/2013 = 656 days

$AM = AL$ days x $(AI \dfrac{\text{ton PM}}{\text{day}} - C \dfrac{\text{ton PM}}{\text{day}})$ = TBD tons PM reductions from 3/15/2012 to December 31, 2013

Summation

The Required PM Emissions offset shall be either equal to or greater than G by December 31, 2013. The PM Emissions offset shall be calculated by the following equation:
$Q + U_1 - AF - AG_1 + AM \geq G$

Coffeyville may use a variation of PM emission limits at the FCCU and reduced coal firing to ensure that the Required PM Emission Offset is equal to or greater than the Excess PM Emissions calculated in G.

The Required PM Emissions offset shall be either equal to or greater than G by December 31, 2016. The PM Emissions offset shall be calculated by the following equation:

$Q + U_2 - AF - AG_2 + AK \geq G$

Coffeyville shall take limits sufficiently low enough to ensure that the Required PM Emission Offset is equal to or greater than the Excess PM Emissions calculated in G.

A-6

# APPENDIX 7

# TEST PROTOCOL DOCUMENT

## CVR ENERGY, COFFEYVILLE, KS

## FCCU CATALYTIC REGENERATOR

PREPARED BY CVR ENERGY

400 NORTH LINDEN

COFFEYVILLE, KS 67337

JANUARY 22, 2010

## TABLE OF CONTENT

TITLE                                                          PAGE

Purpose of Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Pollutants Measured & Procedures . . . . . . . . . . . . . . . . . . . . . 1
    EPA Method 1
    EPA Method 2
    EPA Method 3
    EPA Method 4
    EPA Method 5F

Stack to be Sampled . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Scope of Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Determination of Coke Burn Rates . . . . . . . . . . . . . . . . . . . . . 2

Sampling Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Stack Geometry . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Attachment A
FCCU Protocol Parameters

÷

**SAMPLING PLAN**
**FOR**
**CVR ENERGY**
**COFFEYVILLE, KANSAS**
**FCCU CATALYTIC REGENERATOR VENT**

**Purpose of Test:** The testing is being performed in support of a negotiated consent decree.

**Pollutants to be measured**
**and Sampling Procedures:**

| | |
|---|---|
| Sampling Points | EPA Method 1 |
| Flow | EPA Method 2 |
| Molecular Weight | EPA Method 3A |
| Moisture | EPA Method 4 |
| Particulate Matter | EPA Method 5F |

**Stack to be Sampled:** FCCU Catalytic Regenerator Vent (EU-13-002) ESP Control Device (SV010)

**Scope of Work:**

**Sampling Point Determination – EPA Method 1**

The number and location of the traverse points in the stack will be determined according to the procedures outlined in EPA Method 1.

**Flue Gas Velocity and Volumetric Flow Rate – EPA Method 2**

The flue gas velocity and volumetric flow rate will be determined according to the procedures outlined in EPA Method 2. Velocity measurements will be made using a Type S pitot tube conforming to the geometric specifications detailed in EPA Method 2. Differential pressures will be measured with fluid manometers of the appropriate range. Effluent gas temperatures will be measured with a chromel-alumel thermocouple equipped with a digital temperature indicator.

**Flue Gas Composition and Molecular Weight – EPA Method 3A**

EPA Method 3A will be used to determine oxygen ($O_2$) and carbon dioxide ($CO_2$) concentrations in the flue gas stream. Analysis for carbon dioxide and oxygen will be conducted using the installed and certified CEMS. The dry molecular weight will be calculated from these analysis results.

-1-

### Flue Gas Moisture Content – EPA Method 4

The flue gas moisture content will be determined according to the sampling and analytical procedures outlined in EPA Method 4. The impingers will be connected in series and will contain 100ml of DI $H_2O$ in each of the first two impingers followed by a dry impinger and an impinger containing silica gel. The impingers will be contained in an ice bath in order to assure condensation of the moisture in the flue gas stream. Any moisture that is not condensed in the impingers will be captured in the silica gel; therefore, all moisture can be weighed and entered into moisture content calculations. Moisture determination will be performed in the back half of the Method 5 sampling train used for measurement of particulate matter emissions.

### Non-Sulfate Particulate Matter – EPA Method 5F

Particulate matter will be withdrawn isokinetically from the source and collected on a filter maintained at a temperature in the range 160 ±14 °C (320 ±25 °F). The collected sample will be extracted with water. A portion of the extract will be analyzed for sulfate content by ion chromatography. The remainder will be neutralized with ammonium hydroxide ($NH_4OH$), dried, and weighed. The weight of sulfate in the sample will be calculated as ammonium sulfate (($NH_4)_2SO_4$), and be subtracted from the total particulate weight; the result will be reported as non-sulfate particulate matter.

The sample train will be operated as detailed in the reference method and all required calibrations will be performed. In addition the sampling train will be leak-checked at the nozzle at 15 inches of mercury vacuum before each test and leak-checked at the nozzle after each test   at the highest vacuum reading recorded during the test.   Three runs will be conducted for a minimum of 60 minutes in duration.  The presence of cyclonic flow will be checked at each traverse point and documented prior to starting the test.

### Determination of Coke Burn-off Rates

The non-sulfate particulate emission rates will be calculated in terms of lbPM/1000lb coke burn-off. Coke burn-off will be calculated by refinery personnel using a carbon balance based on measured air blower rates and the carbon monoxide and carbon dioxide concentrations in the regenerator exhaust gas stream.

### Sampling Schedule

Three sampling runs will be performed at a rate within the range of operating parameters defined in Attachment A to this protocol. A date will be selected depending upon the availability of an acceptable testing company. The mandatory 30 days notice of intent to test will be provided to the Agency.

-2-

**Stack Geometry**

The stack has an inside diameter of 88.5" and has 2 test ports at 90 degrees orientation. The test platform is approximately 125 above grade and the test ports are 35' 7" (4.84 diameters) downstream of a bend in the stack and 55' (7.48 diameters) upstream of the stack outlet. This geometry will require the selection of 24 test points.

-3-

## Attachment A - FCCU Protocol Parameters

|  | -5% | Average | +5% |
|---|---|---|---|
| FCCU Baseline (11/15/08-11/14/09) – 12 months | | | |
| Average Coke Burn Rate = 20, 256 (lb/hr) daily average | 19,243 | 20,256 | 21,269 |
| Average Main Air Blower (MAB) Discharge to Regenerator = 59,013 (scfm) daily average | 56,062 | 59,013 | 61,964 |
| Average FCCU Charge = 31,169 (BPD) | 29,611 | 31,169 | 32,727 |

Please note the following:
FCCU

- Primary and Secondary Voltage for ESP

  o This data is not kept in any electronic historian and data is not available historically.

- Secondary current on the ESP

  o This data is not kept in any electronic historian and data is not available historically.