IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THE UNITED STATES OF AMERICA,    )
    )
        AND    )
    )
THE STATE OF KANSAS, ex rel.    )
KANSAS DEPARTMENT OF    )   Civ. No.  6:04-cv-01064
HEALTH AND ENVIRONMENT,    )
    )
        Plaintiffs    )
    )
        v.    )
    )
COFFEYVILLE RESOURCES    )
REFINING & MARKETING, LLC    )
    )
        Defendant.    )
_____)

## FIRST SUPPLEMENTAL COMPLAINT

Plaintiffs, the United States of America (United States), by the authority of the Attorney

General of the United States and through the undersigned attorneys, acting at the request of the

Administrator of the United States Environmental Protection Agency (EPA), and the State of

Kansas, by and through the Kansas Department of Health and Environment (KDHE)

(collectively Plaintiffs), file this Supplemental Complaint and allege as follows:

## NATURE OF ACTION

1.    This is a civil action brought by federal and state government Plaintiffs against

Coffeyville Resources Refining & Marketing, LLC (CRRM or Defendant) pursuant to

Section 113(b) of the Clean Air Act (CAA), 42 U.S.C. § 7413, and Kan. Stat. Ann. (K.S.A.) §

65-3005, for violations of the CAA, the Kansas Air Quality Act (KAQA), various federal and

Kansas regulations, and federal and state permits at CRRM's petroleum refinery located at 401 North Linden Street in Coffeyville, Kansas (the Refinery).

2.      Plaintiffs allege that CRRM has violated and, in some instances, continues to violate, the following federal and state statutes, regulations, and permits applicable to the Refinery:

> New Source Performance Standards (NSPS) promulgated at 40 C.F.R. Part 60, Subpart Ja pursuant to Section 111 of the CAA, 42 U.S.C. § 7411;

> National Emission Standards for Hazardous Air Pollutants (NESHAP) promulgated at 40 C.F.R. Part 63, Subparts CC and UUU pursuant to Section 112 of the CAA, 42 U.S.C. § 7412 (adopted by reference at K.A.R. § 28-19-750);

> Title V of the CAA, 42 U.S.C. §§ 7661-7661f; and

> Federally enforceable permits issued to CRRM by KDHE pursuant to Title V of the CAA, 42 U.S.C. §§ 7661-7661f, KAQA, K.S.A. § 65-3001 *et seq.*, and K.A.R. § 28-19-300 *et seq.*, and annual emissions inventory requirements, K.S.A. § 65-3007, K.A.R. § 28-19-517.

3.      Plaintiffs filed Complaints in this action in March of 2004, ECF Nos. 1 and 4, asserting, *inter alia*, violations of the CAA and the KAQA.

4.      The Court has previously entered two consent decrees in this action.  On July 13, 2004, the Court approved and entered a Consent Decree among the United States, State of Kansas, and CRRM settling the CAA claims and imposing requirements on CRRM with respect to the Refinery.  ECF No. 7.  On April 19, 2012, the Court entered a second Consent Decree (2012 Consent Decree) that replaced the first Consent Decree and imposed additional obligations on CRRM to assure compliance with the CAA, KAQA, and the regulations and permits issued thereunder.  ECF No. 14.

5.      The filing of this Supplemental Complaint is authorized pursuant to Federal Rule of Civil Procedure 15(d) because this Complaint alleges additional violations of the CAA,

KAQA and regulations issued thereunder based on transactions, occurrences, and events that occurred after the filing of the original Complaint.

6.      Paragraph 13 of the 2012 Consent Decree states that its objective is to "further the objectives of the Clean Air Act," and in Paragraph 216 of the 2012 Consent Decree, the Court retained jurisdiction "for the purposes of implementing and enforcing the terms and conditions of the Consent Decree."

7.      The violations alleged in Counts 1 and 2 herein are also violations of the 2012 Consent Decree.  For such violations, Paragraph 205 of the 2012 Consent Decree provides:

> Subject to the provisions of Section XIV of this Consent Decree (Effect Of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States or State for CRRM's violation of this Consent Decree or applicable law. Where a violation of this Consent Decree is also a violation of the Clean Air Act, CRRM shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation. The United States and State will not demand stipulated penalties for a Consent Decree violation if they have commenced litigation seeking penalties under the Clean Air Act for such violation. Notwithstanding the foregoing, the United States reserves all its rights to pursue, under the Consent Decree and/or outside of it, any other non-monetary remedies to which it is legally entitled, including but not limited to injunctive relief for violations of the Consent Decree.

## JURISDICTION, VENUE, AUTHORITY, AND NOTICE

8.      This Court has jurisdiction over the subject matter of this action pursuant to Paragraphs 1 and 216 of the 2012 Consent Decree, Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

9.      The Court has personal jurisdiction over Defendant pursuant to Paragraph 1 of the 2012 Consent Decree and because it is located in this judicial district.

10.     Venue is proper in the District of Kansas pursuant to Paragraph 2 of the 2012 Consent Decree, Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b)-(c) and 1395(a), because CRRM resides and is doing business within this judicial district at the Refinery and because the actions giving rise to the violations alleged herein occurred in this judicial district.

11.     Plaintiff, the United States, is acting at the request of the EPA, an Agency of the United States.

12.     Plaintiff, the State of Kansas is acting at the request of KDHE, an Agency of the State of Kansas.

13.     Authority to bring this action is vested in the United States Department of Justice pursuant to Section 305 of the CAA, 42 U.S.C. § 7605, and 28 U.S.C. §§ 516 and 519.

14.     Authority to bring this action is vested in the Secretary of KDHE by Section 304 of the CAA, 42 U.S.C. § 7604, and K.S.A. § 65-3005, and in the Office of the Kansas Attorney General by K.S.A. § 75-702.

## STATUTORY AND REGULATORY BACKGROUND

I.     <u>CLEAN AIR ACT</u>

**A.     New Source Performance Standards**

15.     Section 111(b)(1)(A) of the CAA requires EPA to publish a list of categories of stationary sources that cause or contribute significantly to air pollution that may reasonably be anticipated to endanger the public health or welfare and promulgate standards of performance for new sources within those categories.  42 U.S.C. § 7411(b)(1)(A).  These standards, commonly known as the New Source Performance Standards (NSPS), are codified at 40 C.F.R. Part 60.

16.     At all times relevant herein, the EPA listed petroleum refineries as a category of stationary sources subject to standards of performance.  42 U.S.C. § 7411(b)(1)(A).

17.     At all times relevant herein, the CAA defined "stationary source" as any "building, structure, facility, or installation which emits or may emit any air pollutant" and "new source" as a stationary source, the construction or modification of which is commenced after the publication of the NSPS regulations (or, if earlier proposed regulations) prescribing a standard of performance applicable to such source.  42 U.S.C. § 7411(a)(2)-(3).

18.     At all times relevant herein, the CAA defined "Modification" as any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted.  42 U.S.C. § 7411(a)(4).

19.     At all times relevant herein, Section 111(e) of the CAA, 42 U.S.C. § 7411(e), prohibited an owner or operator from operating any new (i.e., constructed or modified) source in violation of an NSPS after the effective date of the NSPS applicable to such source.

20.     Pursuant to Section 111(b) of the CAA, 42 U.S.C. § 7411(b), EPA has promulgated NSPS Subpart Ja for petroleum refineries, which is codified at 40 C.F.R. §§ 60.100a-60.109a (NSPS Subpart Ja).

21.     NSPS Subpart Ja applies, *inter alia,* to flares, defined by NSPS Subpart Ja as "… a combustion device that uses an uncontrolled volume of air to burn gases," that commenced construction, modification, or reconstruction after June 24, 2008.  40 C.F.R. §§ 60.100a(b), 60.101a.

22.     At all times relevant herein, NSPS Subpart Ja required owners and operators of subject flares to install, operate, calibrate, and maintain an $H_2S$ CEMS for continuously monitoring and recording the concentration by volume (dry basis) of $H_2S$ in the fuel gases before being burned in the flare.  40 C.F.R. § 60.107a(a)(2).

23.     At all times relevant herein, NSPS Subpart Ja, 40 C.F.R. § 60.103a(f) and (h), prohibited owners and operators of subject flares from burning in any affected flare fuel gas containing H$_2$S in excess of 162 parts per million by volume (ppmv) determined hourly on a 3-hour rolling average basis.

24.     NSPS Subpart Ja also applies to fuel gas combustion devices, including process heaters, which either commenced construction, modification or reconstruction after May 17, 2007.  40 C.F.R. § 60.100a(a), (b).

25.     At all times relevant herein, NSPS Subpart Ja, 40 C.F.R. § 60.107a(c), required owners and operators of process heaters subject to nitrogen oxide (NOx) emissions limits in 40 C.F.R. § 60.102a(g)(2) to:

        a.     install, operate, and maintain each NOx monitoring instrument (NOx CEMS) with a span value between 2 and 3 times the applicable emissions limit, inclusive; and

        b.     conduct a performance evaluation for each NOx CEMS in compliance with the requirements of 40 C.F.R. § 60.13(c), which requires the evaluation to be conducted during any performance test required under 40 C.F.R. § 60.8 or within 30 days thereafter.

**B.     National Emission Standards for Hazardous Air Pollutants (NESHAP)**

26.     Section 112 of the CAA requires EPA to promulgate regulations to address the hazardous air pollutants (HAPs) listed in Section 112(b), as revised by EPA.  42 U.S.C. § 7412(b); 40 C.F.R. Part 63, Subpart C.

27.     Pursuant to Section 112(c) and (d) of the CAA, EPA has listed categories and subcategories of "major sources" of HAPs and promulgated regulations establishing emissions standards and/or work practices applicable to major sources of HAPs in each such category or subcategory (NESHAPs) which are codified at 40 C.F.R. Parts 61 and 63.  *See* 42 U.S.C. § 7412(c), (d)(1).

28.     At all times relevant herein, the CAA defined "major source" as any stationary source or group of stationary sources located within a contiguous area and under common control that emits or has the potential to emit, considering controls, in the aggregate, 10 tons per year (TPY) or more of any HAP or 25 TPY or more of any combination of HAPs.  42 U.S.C. § 7412(a)(1).

29.     At all times relevant herein, Section 112 of the CAA provided that after the effective date of any emissions standard, limitation, or regulation promulgated pursuant to Section 112, no person may operate a source in violation of an applicable NESHAP regulation. 42 U.S.C. § 7412(i)(3).

### i.     *NESHAP Subpart CC*

30.     Pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, EPA has promulgated Part 63 NESHAP Subpart CC for petroleum refineries, which are codified at 40 C.F.R. §§ 63.640-63.671 (Part 63 NESHAP Subpart CC).

31.     At all times relevant herein, Part 63 NESHAP Subpart CC required owners and operators of a "petroleum refining process unit" that is a major source of HAPs or emits or has equipment containing or contacting one or more of the HAPs listed in Part 63 NESHAP Subpart  CC, Table 1, to comply with the provisions of NSPS Subpart VV (40 C.F.R. §§ 60.480-60.489).  Part 63 NESHAP Subpart CC, 40 C.F.R. § 63.648.

32.     At all times relevant herein, NSPS Subpart VV required, *inter alia,* that each open-ended valve or line shall be equipped with a cap, blind flange, plug, or a second valve. 40 C.F.R. § 60.482-6(a)(1).

*ii.*     *NESHAP Subpart UUU*

33.     Pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, EPA has promulgated Part 63 NESHAP Subpart UUU for Hazardous Air Pollutants for Petroleum Refineries, which are codified at 40 C.F.R. §§ 63.1560-1579 (Part 63 NESHAP Subpart UUU).

34.     At all times relevant herein, Part 63 NESHAP Subpart UUU required that no later than August 1, 2017, owners and operators shall conduct periodic performance tests for particulate matter (PM) for each catalytic cracking unit at least once every five years according to the requirements listed in Table 4 to Part 63 NESHAP Subpart UUU.  40 C.F.R. § 63.1571(a)(5).

35.     At all times relevant herein, Table 4 to NESHAP Subpart UUU required compliance with EPA Test Method 5 or Test Method 5F for PM performance tests conducted pursuant to 40 C.F.R. § 63.1571(a)(5).  Part 63 NESHAP Subpart UUU Table 4, Row 2.

36.     At all times relevant herein, Test Method 5F required that a leak check be conducted at the conclusion of each sampling run and if a component change becomes necessary during a sampling run.  40 C.F.R. Part 60 Appendix A-3, Test Method 5F § 8.0 (incorporating Test Method 5 requirements).

37.     At all times relevant herein, Test Method 5F required that PM is to be withdrawn isokinetically from the source and collected on a filter maintained at a temperature in the range of 160±14 ºC (320±25 ºF).  40 C.F.R. § 60 Appendix A-3, Test Method 5F § 8.1.

**C.     New Source Review**

38.     Section 108(a) of the CAA, 42 U.S.C. § 7408(a), requires EPA to issue air quality criteria for each pollutant (criteria pollutant), the emissions of which cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare, and the

presence of which in the ambient air results from numerous or diverse mobile or stationary sources.

39.     Section 109(a) of the CAA requires EPA to promulgate national ambient air quality standards (NAAQS) for each criteria pollutant.  42 U.S.C. § 7409(a).

40.     Pursuant to Section 109(a) of the CAA, EPA has promulgated NAAQS for sulfur oxides ($SO_2$) (which is measured in the ambient air as sulfur dioxide), nitrogen oxides (NOx) (which is measured in the ambient air as nitrogen dioxide), carbon monoxide (CO), ozone, particulate matter (PM), and lead.  40 C.F.R. Part 50.

41.     Section 107(d) of the CAA requires EPA to promulgate designations of those areas within a state that do not meet the NAAQS (Non-Attainment areas), areas that meet NAAQS (Attainment areas), and areas that cannot be classified as meeting or not meeting the NAAQS (Unclassifiable areas).  42 U.S.C. § 7407(d).  Air quality designations can be found at 40 C.F.R. Part 81.

42.     Section 110 of the CAA requires each state to adopt and submit to EPA for approval a state implementation plan (SIP) that provides for the implementation, maintenance, and enforcement of the NAAQS.  42 U.S.C. § 7410.

43.     Once EPA approves a SIP, it is also independently enforceable by the federal government under Section 113 of the CAA, 42 U.S.C. § 7413.

44.     The State of Kansas has a SIP (Kansas SIP) approved by EPA that is codified at K.A.R. § 28-19-8 *et seq.  See* 40 C.F.R. Part 52 Subpart R (40 C.F.R. § 52.870 *et seq.*).

45.     The Kansas SIP is federally enforceable.  42 U.S.C. § 7413.

46.     Part C of Title I (Sections 160 through 169B) of the CAA sets forth requirements for the prevention of significant deterioration (PSD) of air quality in those areas designated as

either Attainment or Unclassifiable area for purposes of meeting the NAAQS.  42 U.S.C. §§ 7470-92.

47.     Pursuant to Section 165(a) of the CAA, no "major emitting facility" may be constructed or modified in an Attainment or Unclassifiable area unless, among other things:  (a) a PSD permit has been issued for the proposed facility; and (b) the proposed facility is subject to the best available control technology (BACT) for each pollutant subject to regulation under the CAA emitted from, or which results from, such facility.  42 U.S.C. §§ 7475(a)(1), (4); 7479(2)(C) ("construction" includes the modification of a facility).

48.     At all times relevant herein, the Kansas SIP required that any person who proposes to construct or modify a stationary source or emissions unit shall obtain a construction permit before commencing such construction or modification where the emissions unit or stationary source is a major source of hazardous air pollutants.  K.A.R. § 28-19-300(a).

49.     At all times relevant herein, construction permits issued by Kansas pursuant to K.A.R. § 28-19-300(a) have been federally enforceable.  *See* 42 U.S.C. § 7413(b).

**D.     Title V of the CAA**

50.     Title V of the CAA, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources that are subject to various CAA requirements including NSPS and NESHAP requirements.  42 U.S.C. § 7661a(a).

51.     Under the Title V operating permit program all "applicable requirements" for compliance with the CAA, including NSPS and NESHAP requirements, are set forth in one operating permit known as a Title V permit.  42 U.S.C. § 7661c(a), 40 C.F.R. § 70.6(a).

52.     Pursuant to Section 502(b) of the CAA, 42 U.S.C. § 7661a(b), EPA promulgated regulations implementing the requirements of Title V and establishing the minimum elements of

the Title V permit program to be administered by any state or local air pollution control agency.

57 Fed. Reg. 32250 (July 21, 1992).  These regulations are codified at 40 C.F.R. Part 70.

53.     EPA has approved the State of Kansas' regulations implementing Title V of the

CAA (Kansas Title V Regulations) that are codified at K.A.R. §§ 28-19-500 – 28-19-564.  *See*

40 C.F.R. Part 70, App. A Kansas (g).

54.     EPA has authorized Kansas to issue and enforce Title V permits.  *See* 40 C.F.R.

Part 70, App. A Kansas (g).

55.     At all times relevant herein, the CAA, KAQA, and federal and Kansas Title V

Regulations required each owner and operator of a source to submit a permit application

containing all applicable federal and state air pollution control requirements.  42 U.S.C.

§ 7661b(c); 40 C.F.R. § 70.5; K.S.A. § 65-3008(a); K.A.R. § 28-19-500.

56.     At all times relevant herein, the CAA, KAQA, and federal and Kansas Title V

Regulations provided that no source subject to Title V may operate except in compliance with a

Title V permit.  42 U.S.C. § 7661a(a); 40 C.F.R. §§ 70.1(b), 70.7(b); K.S.A. § 65-3008(a);

K.A.R. § 28-19-500.

57.     At all times relevant herein, the Kansas Title V Regulations and all terms and

conditions of a state-issued Title V permit have been federally enforceable.  42 U.S.C.

§ 7413(a)(3), (b)(2); 40 C.F.R. § 70.6(b).

**E.     CAA Enforcement Authorities**

58.     Section 113(a)(1) and (3) of the CAA authorizes EPA to bring a civil action

against any person who is in violation of any requirement or prohibition of Sections 111 or 112

of the CAA, including any NSPS, NESHAP, federal or state Title V requirement, regulation,

permit or other CAA requirement.  42 U.S.C. § 7413(a)(1) and (3).

59.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the Court to enjoin a violation, to require compliance, to assess and recover a civil penalty, and to award any other appropriate relief for each violation.

60.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes civil penalties of up to $25,000 per day for each violation of the CAA.  This statutory maximum civil penalty has been increased to reflect inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act (28 U.S.C. § 2461), as amended, to $37,500 per day for each violation occurring after January 12, 2009, through November 2, 2015, and up to $101,439 per day for each violation occurring after November 2, 2015 and assessed after January 13, 2020.  *See* 73 Fed. Reg. 75,340-75,346 (Dec. 11, 2008); 78 Fed. Reg. 66,643-66,648 (Nov. 6, 2013); 81 Fed. Reg. 43,091 (July 1, 2016); 85 Fed. Reg. 1751 (Jan. 13, 2020), all codified at 40 C.F.R. Part 19.

II.     APPLICABLE AND RELEVANT KANSAS LAW

61.     The KAQA, K.S.A. §§ 65-3001 – 65-3031, establishes a regulatory scheme to promote air quality conservation and control of air pollution in the State of Kansas, the responsibility for which is placed with the secretary of KDHE.  K.S.A § 65-3003.

62.     Pursuant to the KAQA, Kansas has adopted by reference Part 63 NESHAP Subpart CC and UUU, as in effect on July 1, 2010.  K.A.R. § 28-19-750.

63.     At all times relevant herein, K.A.R. § 28-19-11 provided that an emission source having emissions that are in excess of the applicable emission limitation and standard and result from startup, shutdown, malfunctions, or scheduled maintenance of control or processing equipment and appurtenances may be exempt from enforcement action at the secretary's discretion if both of the following conditions are met:

> (1) The person responsible for the operation of the emission source notifies the department of the occurrence and nature of the excess emissions resulting from startup,

shutdown, malfunctions, or scheduled maintenance, in writing, within 10 days of discovery of the excess emissions; and

(2) Reasonable action is taken regarding the occurrence specified in paragraph (a)(1) to initiate and complete any necessary repairs and place the equipment back in operation as quickly as possible.

64.     At all times relevant herein, the EPA-approved Kansas Title V Regulations at K.A.R. § 28-19-517(a) required that the owner or operator of each stationary source that is required to apply for a Class I operating permit shall submit to KDHE an annual emissions inventory for each stationary source for each calendar year for any regulated pollutant deemed necessary by the secretary from each emission unit, as defined in K.A.R. § 28-19-200, and shall include:

        a.      All operating information;

        b.      actual emissions, including fugitive emissions, calculated pursuant to K.A.R. § 28-19-210;

        c.      any quantity of emissions regardless of operating hours, including sources that did not operate; and

        d.      emissions from each source only while operating in Kansas, if the source operates both in Kansas and out of state.

65.     At all times relevant herein, K.A.R. § 28-19-517(d)(1) required that any owner or operator who fails to submit the annual emissions inventory and pay the annual emissions fee by the due date shall pay a late fee of either $200 per day or 0.10 percent of the annual emissions fee per day, whichever is greater.

66.     At all times relevant herein, K.A.R. § 28-19-210 required that calculations of actual emissions from any emissions unit or stationary source must be made using either (1) data generated from a continuous monitoring system, (2) approved emissions factors in K.A.R. § 28-

19-210(d), (3) material balances specified in K.A.R. § 28-19-210(e), (4) another method approved by KDHE, (5) potential to emit if no other method qualifies, or (6) any combination of these that most accurately demonstrates emissions, pursuant to the processes and terms of K.A.R. § 28-19-210.

67.    At all times relevant herein, K.A.R. § 28-19-200(bbb)(2) and (3) defined "regulated pollutant" to include $SO_2$.

68.    At all times relevant herein, K.A.R. § 28-19-517 required the owner or operator to submit to KDHE an annual emissions fee based on the annual emissions inventory.

69.    At all times relevant herein, K.S.A. § 65-3025 provided that:

It shall be unlawful for any person to do any of the following:

(a) Violate any provision of an order issued under this act.

(b) Violate any provision of an approval or permit issued under this act.

(c) Violate any provision of this act or any rule and regulation promulgated under this act, unless the secretary makes a determination relating to the permittee that the specified provisions referred to in such determination are not applicable to the source and the permit includes that determination or a concise summary thereof. Compliance with the provisions of a permit shall be deemed compliance with applicable provisions of this act or any rule and regulation promulgated under this act if the permit includes the applicable requirements of such provisions. . . .

(f) Fail to pay any fee required by this act or rules and regulations promulgated under this act.

70.    K.S.A. § 65-3018 authorizes civil penalties of up to $10,000 per day for each violation of K.S.A. § 65-3025 and amendments thereto.

71.    K.S.A. § 65-3018 provides that in the case of a continuing violation every day such violation continues shall be deemed a separate violation.

72.    K.S.A. § 65-3011 authorizes KDHE, upon finding that any person has violated any provision of the KAQA, the regulations promulgated thereunder, or a permit issued thereunder, to order such person to take such action as necessary to correct the violation.

73.     K.S.A. § 65-3008b authorizes KDHE to suspend or revoke an approval or a permit if the permittee has violated any provision of the approval or the permit, any provision of the KAQA or any rule and regulation adopted under the KAQA and applicable to the permitted source.

## GENERAL ALLEGATIONS

I.      THE DEFENDANT

74.     At all times relevant herein, CRRM has been a corporation incorporated under the laws of the State of Delaware and authorized to do business in the State of Kansas.

75.     CRRM is a "person" within the meaning of the CAA and the regulations promulgated and permits issued thereunder including Sections 111, 112, 302(e), and 502a of the CAA, 42 U.S.C. §§ 7411, 7412, 7602(e), and 7661a, and of KAQA and the regulations and permits issued thereunder, including K.S.A. §§ 65-3008, 65-3011, 65-3018, 65-3025.

76.     At all times relevant herein, CRRM has been the "owner or operator," of the Refinery within the meaning of the CAA, and is subject to the regulations promulgated and permits issued thereunder including Section 111(a)(5) of the CAA, 42 U.S.C. § 7411(a)(5), Section 112(a)(9) of the CAA, 42 U.S.C. § 7412(a)(9), Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Section 502 of the CAA, 42 U.S.C. § 7661a, NSPS Subparts A, J, and Ja, 40 C.F.R. §§ 60.1, 60.2, 60.48b, 60.100-109, 60.100a-109a, Part 63 NESHAP Subparts A, CC and UUU, 40 C.F.R. §§ 63.2, 63.648, 63.1651; 40 C.F.R. §§ 70.1, 70.5, 70.7, and the Kansas SIP and Title V Regulations and permits issued thereunder including K.S.A. § 65-3025 and K.A.R. § 28-19-517.

II.     REFINERY OPERATIONS

A.      **General Refinery Operations**

77.     At all relevant times herein, CRRM has conducted operations at the Refinery that

involve the physical, thermal, and chemical separation of crude oil into marketable petroleum products.

78.     At all relevant times herein, the Refinery has been a "petroleum refinery" within the meaning of NSPS Subpart Ja, 40 C.F.R. § 60.101a(a), and Part 63 NESHAP Subpart UUU, 40 C.F.R. §§ 63.1561, and K.A.R. §§ 28-19-720, 28-19-735.

79.     At all relevant times herein, the petroleum refining process employed at the Refinery has resulted in air emissions of significant quantities of air pollutants including HAPs, $SO_2$, NOx, PM, carbon monoxide, volatile organic compounds, and benzene.

80.     At all relevant times herein, the Refinery has had the potential to emit considering controls, in the aggregate, 10 tons per year (TPY) or more of any hazardous air pollutant (HAP) or 25 TPY or more of any combination of HAPs.

81.     At all relevant times herein, the Refinery has been a "stationary source," a "major stationary source," a "major source," a "major emitting source," and an "existing source" within the meaning of Sections 111, 112, 113, 165(a) 302(j) and (z), 501 and 502 of the CAA, NSPS Subpart A, Part 63 NESHAP Subparts A, CC, and UUU, the federal and Kansas Title V Regulations.  *See* 42 U.S.C. §§ 7411, 7412, 7475(a), 7602(j) and (z), 7661 and 7661a, 40 C.F.R. §§ 60.1, 60.2; 63.1, 63.2, 63.640, 63.156140 C.F.R. § 70.2; K.S.A. § 65-3008; K.A.R. § 28-19-500 *et seq.*, K.A.R. §§ 28-19-720, 28-19-735, 28-19-750.

## B.     Flares

82.     A flare is a combustion device that uses an uncontrolled volume of air to burn gases.  40 C.F.R. § 60.101a.

83.     At all relevant times herein, CRRM has operated three "flares" at the Refinery within the meaning of NSPS Subpart Ja, 40 C.F.R. § 60.101a, and K.A.R. § 28-19-720.

84.     The flares at the Coffeyville Refinery are known as the Alky Flare, the Coker Flare and Cold Water Pond (CWP) Flare.

85.     At all times relevant herein, the CRRM Refinery generated $H_2S$ from various processes which, when burned in a flare, form $SO_2$.

86.     Between June 24, 2008, and November 10, 2015, CRRM commenced "modifications" on the Coker and CWP Flares at the Refinery within the meaning of NSPS Subparts A and Ja and after November 10, 2015, each of these flares has been an "affected facility" subject to the requirements of NSPS Subpart Ja. *See* 40 C.F.R. §§ 60.2, 60.100a(b) and (c); 2012 Consent Decree ¶ 61.

**C.      Process Heaters**

87.     At all relevant times herein, CRRM has operated a hydrogen plant at the Refinery that contains a process heater, which is a "fuel gas combustion device" within the meaning of NSPS Subpart Ja. *See* 40 C.F.R. §§ 60.100a, 60.101a.

88.     The process heater at the hydrogen plant at the Refinery was constructed and/or modified and/or reconstructed after May 14, 2007, and therefore, at all relevant times herein, this process heater has been an "affected facility" subject to the requirements of NSPS Subparts A and Ja. *See* 40 C.F.R. §§ 60.1, 60.100a.

89.     At all times relevant herein, CRRM has operated a Dehexanizer Unit at the Refinery within which there is a process heater, which is a "fuel gas combustion device" within the meaning of NSPS Subpart Ja. *See* 40 C.F.R. §§ 60.100a, 60.101a.

90.     The process heater within the Dehexanizer Unit was constructed and/or modified and/or reconstructed after May 14, 2007, and therefore, at all relevant times herein, this heater has been an "affected facility" subject to the requirements of NSPS Subparts A and Ja. *See* 40 C.F.R. §§ 60.1, 60.100a.

91.     The process heaters at the hydrogen plant and the Dehexanizer Unit are natural draft process heaters and are therefore subject to the NOx emissions limits in NSPS Subpart Ja, 40 C.F.R. § 60.102a(g)(2)(i).

**D.     Petroleum Refining Process Units**

92.     At all relevant times herein, multiple "petroleum refining process units" have been located at the Refinery that emit or have equipment containing or contacting one or more HAPs listed in Part 63 NESHAP Subpart CC, Table 1, within the meaning of Part 63 NESHAP Subpart CC.  40 C.F.R. §§ 63.640, 63.641.

93.     At all times relevant herein, the petroleum refining process units at the Refinery included open-ended valves and lines and are therefore "affected sources" subject to the requirements of Part 63 NESHAP Subpart CC.

**E.     Emissions Inventory Reports**

94.     At all times relevant herein, the Kansas SIP required CRRM to obtain a Class 1 Operating permit for the Refinery from KDHE.

**F.     FCCU**

95.     At all relevant times herein, CRRM has operated a fluid catalytic cracking unit (FCCU) at the Refinery in which petroleum derivatives are "continuously charged; hydrocarbon molecules in the presence of a catalyst suspended in a fluidized bed are fractured into smaller molecules, or react with a contact material suspended in a fluidized bed to improve feedstock quality for additional processing; and the catalyst or contact material is continuously regenerated by burning off coke and other deposits."  40 C.F.R. §§ 60.101a, 63.1579.

96.     The Refinery's FCCU includes a process vent or group of process vents that are associated with regeneration of the catalyst used in the unit (i.e., the catalyst regeneration flue

gas vent) and thereby is an "affected source" subject to the requirements of Part 63 NESHAP

Subpart UUU, 40 C.F.R. § 63.1562(b)(1).

III.     TITLE V PERMITS ISSUED TO CRRM BY KDHE

        97.     KDHE, acting on behalf of the State of Kansas, has issued the Refinery Class I

operating permits pursuant to Title V of the CAA, and has renewed and/or modified such permits

from time to time.  42 U.S.C. §§ 7661-7661f, and K.A.R §§ 28-19-500 - 518.

        98.     Relevant to this Complaint, KDHE has issued, modified and/or re-issued the

following Title V Permits to the Refinery:  Permit No. 265, issued on August 8, 2006, (2006

Title V Permit), and Permit No. 9458, issued on January 17, 2017 (2017 Title V Permit).

        99.     The 2006 and 2017 Title V Permits contained the following federally enforceable

requirements applicable to CRRM and the Refinery.

| Requirement | 2006 Title V Permit Cite | 2017 Title V Permit Cite |
|---|---|---|
| NSPS Flare Concentration Limit | Att. D (pages 35 and 44) | § X and Att. D |
| NSPS Subpart Ja: NOx CEMS Requirement for Heaters | Not Applicable | § X and Att. D |
| Part 63 NESHAP Subpart CC: Open Ended Line Requirements | Att. D | § X and Att. D |
| Part 63 NESHAP Subpart UUU: FCCU PM Testing | Not Applicable | § X and Att. D |
| K.A.R. § 28-19-517: Emissions Inventory Reporting | Page 10 | § VIII.E |
| Emissions Limits Deviation Reporting | Page 14 | § XIII |

IV.     EPA INSPECTIONS AND REQUESTS FOR INFORMATION SENT TO CRRM

        100.    Pursuant to Section 114(a) of the CAA, 42 U.S.C. § 7414(a), on March 9, 2016,

July 25, 2016, and March 2, 2020, EPA sent CRRM requests for information to determine

CRRM's compliance with the CAA.  In response to these requests, CRRM provided EPA with

information and data that supports the allegations set forth herein.

101.     In response to the information requests described in Paragraph 101 above, CRRM provided EPA with information and data that supports the allegations set forth herein.

102.     Pursuant to the 2012 Consent Decree, NSPS Subpart Ja, and informal requests, CRRM has periodically submitted additional data, reports and information to EPA that supports the allegations set forth herein.

103.     EPA personnel visited and/or inspected the CRRM Refinery in October 2016, January 2017, April 2017, and June 2017, during which they collected information that supports the allegations set forth herein by reviewing documents, observing testing and/or conducting testing on refinery equipment, and interviewing Refinery personnel.

## FIRST CLAIM FOR RELIEF

### Exceedances of $H_2S$ Concentration Limit on the Coker Flare in Violation of NSPS Subpart Ja and the 2006 and 2017 Title V Permits

104.     The allegations in Paragraphs 1 through 104 are hereby re-alleged and incorporated by reference as if fully set forth herein.

105.     Since November 11, 2015, NSPS Subpart Ja and the 2006 and 2017 Title V Permits have also prohibited, CRRM from burning in the Coker Flare any fuel gas that contains $H_2S$ in excess of 162 ppmv determined hourly on a 3-hour rolling average.  40 C.F.R. § 60.103a(h), 2006 Title V Permit Att. D at 35 (expressed as .10 gr/dscf); 2017 Title V Permit § X and Att. D.

106.     Data received from CRRM demonstrates that on at least 318 days after November 10, 2015, CRRM exceeded the 3-hour 162 ppmv $H_2S$ concentration limit on the Coker Flare in violation of NSPS Subpart Ja, 40 C.F.R. § 60.103a(h), and for those exceedances occurring after January 17, 2017, also in violation of the 2006 Title V Permit, Att. D page 35 and 2017 Title V Permit § X and Att. D.

107.    In the alternative, if the Court determines that any of CRRM's $H_2S$ concentration monitoring data for the Coker Flare is inaccurate, then CRRM did not adequately operate, calibrate, and/or maintain the $H_2S$ CEMS on the Coker Flare on such days, in violation of NSPS Subpart Ja, 40 C.F.R. §§ 60.107a(a)(2), 60.103a(f), and also in violation of the 2006 and 2017 Title V Permits Att. D.

108.    Failure by CRRM to provide notification to KDHE under K.A.R. § 28-19-11 of any startup, shutdown, or malfunction events nullifies any claim of exemption from enforcement action for these exceedances.

109.    Based on a reasonable opportunity for further investigation or discovery, unless restrained by the Court, these violations will continue.

110.    As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), CRRM is liable for injunctive relief and the assessment of civil penalties to the United States of not more than the per-day per-violation amounts set forth in Paragraph 61 above.

111.    As a result of the above-listed violations and pursuant to K.S.A. § 65-3018, CRRM is liable for injunctive relief and the assessment of civil penalties to the State of Kansas of not more than $10,000 per day for each violation that occurred on or after January 17, 2017.

## SECOND CLAIM FOR RELIEF

**Exceedances of $H_2S$ Concentration Limit on the CWP Flare
in Violation of NSPS Subpart Ja and the 2017 Title V Permit**

112.    The allegations in Paragraphs 1 through 104 are hereby re-alleged and incorporated by reference as if fully set forth herein.

113.    Since November 11, 2015, NSPS Subpart Ja and the 2006 and 2017 Title V Permits have also prohibited, CRRM from burning in the CWP Flare any fuel gas that contains

$H_2S$ in excess of 162 ppmv determined hourly on a 3-hour rolling average.  40 C.F.R. § 60.103a(h), 2006 Title V Permit Att. D at 35 (expressed as .10 gr/dscf); 2017 Title V Permit § X and Att. D.

114.    Data received from CRRM demonstrates that on at least 486 days after November 10, 2015, CRRM exceeded the 3-hour 162 ppmv $H_2S$ concentration limit on the CWP Flare in violation of NSPS Subpart Ja, 40 C.F.R. § 60.103a(h), and for those exceedances occurring after January 17, 2017, also in violation of the 2006 Title V Permit, Att. D page 44, and 2017 Title V Permit § X and Att. D.

115.    In the alternative, if the Court determines that any of CRRM's $H_2S$ concentration monitoring data for the CWP Flare is inaccurate, then CRRM did not adequately operate, calibrate, and/or maintain the $H_2S$ CEMS on the CWP Flare on such days, in violation of NSPS Subpart Ja, 40 C.F.R. §§ 60.107a(a)(2), 60.103a(f), and also in violation of the 2006 and 2017 Title V Permits Att. D.

116.    Failure by CRRM to provide notification to KDHE under K.A.R. § 28-19-11 of any startup, shutdown, or malfunction events nullifies any claim of exemption from enforcement action for these exceedances.

117.    Based on a reasonable opportunity for further investigation or discovery, unless restrained by the Court, these violations will continue.

118.    As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), CRRM is liable for injunctive relief and the assessment of civil penalties to the United States of not more than the per-day per-violation amounts set forth in Paragraph 61 above.

119.     As a result of the above-listed violations and pursuant to K.S.A. § 65-3018, CRRM is liable for injunctive relief and the assessment of civil penalties to the State of Kansas of not more than $10,000 per day for each violation that occurred on or after January 17, 2017.

### THIRD CLAIM FOR RELIEF

**Failure to Use Proper Span Value for the NOx CEMS on Hydrogen Plant Process Heater in Violation of NSPS Subpart Ja and the 2017 Title V Permit**

120.     The allegations in Paragraphs 1 through 104 are hereby re-alleged and incorporated by reference as if fully set forth herein.

121.     At relevant times herein, NSPS Subpart Ja required, and after January 17, 2017, the 2017 Title V Permit also required, CRRM to set the span value of the NOx CEMS on its process heater in the hydrogen plant to between 2 and 3 times the applicable emissions limit of 40ppm.  40 C.F.R. § 60.107a(c)(1), 2017 Title V Permit § X and Att. D.

122.     Information received from CRRM demonstrates that beginning on or about August 19, 2016 and ending on or about July 1, 2017, CRRM did not set the span value of the NOx CEMS on CRRM's process heater in its hydrogen plant to between 2 and 3 times the applicable emissions limit of 40ppm but instead set the span to be at 500ppm in violation of NSPS Subpart Ja, 40 C.F.R. § 60.107a(c)(1), and for those days of violation occurring after January 17, 2017, also in violation of the 2017 Title V Permit § X and Att. D.

123.     As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), CRRM is liable for the assessment of civil penalties to the United States of not more than the per-day per-violation amounts set forth in Paragraph 61 above.

124.     As a result of the above-listed violations and pursuant to K.S.A. § 65-3018, CRRM is liable for the assessment of civil penalties to the State of Kansas of not more than $10,000 per day for each violation that occurred on or after January 17, 2017.

## FOURTH CLAIM FOR RELIEF

**Failure to Use Proper Span Value for the NOx CEMS on Dehexanizer Unit Process Heater in Violation of NSPS Subpart Ja and the 2017 Title V Permit**

125.    The allegations in Paragraphs 1 through 104 are hereby re-alleged and incorporated by reference as if fully set forth herein.

126.    At relevant times herein, NSPS Subpart Ja required, and after January 17, 2017, the 2017 Title V Permit also required, CRRM to set the span value of the NOx CEMS on the Dehexanizer Unit process heater to between 2 and 3 times the applicable emissions limit of 40ppm.  40 C.F.R. § 60.107a(c)(1), 2017 Title V Permit § X and Att. D.

127.    Information received from CRRM demonstrates that beginning on or about September 16, 2014 and ending on or about July 1, 2017, CRRM did not set the span value of the NOx CEMS on CRRM's Dehexanizer Unit process heater to between 2 and 3 times the applicable emissions limit of 40ppm but instead set the span to be at 500ppm in violation of NSPS Subpart Ja, 40 C.F.R. § 60.107a(c)(1), and for those days of violation occurring after January 17, 2017, also in violation of the 2017 Title V Permit § X and Att. D.

128.    As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), CRRM is liable for the assessment of civil penalties to the United States of not more than the per-day per-violation amounts set forth in Paragraph 61 above.

129.    As a result of the above-listed violations and pursuant to K.S.A. § 65-3018, CRRM is liable for the assessment of civil penalties to the State of Kansas of not more than $10,000 per day for each violation that occurred on or after January 17, 2017.

## FIFTH CLAIM FOR RELIEF

**Failure to Timely Conduct Performance Evaluation on Dehexanizer Unit Process Heater NOx CEMS in Violation of NSPS Subpart Ja**

130.    The allegations in Paragraphs 1 through 104 are hereby re-alleged and incorporated by reference as if fully set forth herein.

131.    NSPS Subpart Ja required CRRM to conduct a performance evaluation on the $NO_X$ CEMS on the process heater in the Dehexanizer Unit, on or before March 13, 2015. 40 C.F.R. § 60.107a(c)(2) (referencing NSPS Subpart A, 40 C.F.R. §§ 60.8, 60.13(c)).

132.    Information received from CRRM demonstrates that CRRM did not conduct the performance evaluation on the heater in the Dehexanizer Unit NOx CEMS before March 13, 2015, but conducted the performance evaluation approximately 80 days later on June 2, 2015, in violation of NSPS Subpart Ja, 40 C.F.R. § 60.107a(c)(2) (referencing NSPS Subpart A, 40 C.F.R. §§ 60.8, 60.13(c)).

133.    As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), CRRM is liable for the assessment of civil penalties to the United States of not more than the per-day per-violation amounts set forth in Paragraph 61 above.

134.    As a result of the above-listed violations and pursuant to K.S.A. § 65-3018, CRRM is liable for the assessment of civil penalties to the State of Kansas of not more than $10,000 per day for each violation that occurred on or after January 17, 2017.

## SIXTH CLAIM FOR RELIEF

**Failure to Equip All Open-Ended Lines with a Cap, Blind Flange, Plug, or Second Valve in Violation of Part 63 NESHAP Subpart CC, K.A.R. § 28-19-750, and the 2006 and 2017 Title V Permits**

135.    The allegations in Paragraphs 1 through 104 are hereby re-alleged and incorporated by reference as if fully set forth herein.

136.     At all relevant times herein, Part 63 NESHAP Subpart CC and the 2006 and 2017 Title V permits have required CRRM to equip all open-ended lines with a cap, blind flange, plug, or second valve.  40 C.F.R. § 63.648 (requiring compliance with NSPS Subpart VV, 40 C.F.R. §§ 60.480 – 60.489); 2006 Title V Permit Att. D; 2017 Title V Permit § X and Att. D.

137.     Information received during the April 2017 EPA inspection of the Refinery, and an October 2018 semi-annual report CRRM submitted to EPA demonstrates that beginning on or before April 3, 2017, CRRM failed to equip at least 45 open-ended lines with a cap, blind flange, plug, or second valve, in violation of Part 63 NESHAP Subpart CC, 40 C.F.R. § 63.648 (requiring compliance with NSPS Subpart VV, 40 C.F.R. §§ 60.480 – 60.489, 40 C.F.R. § 60.482-6) and the 2006 Title V Permit Att. D, and 2017 Title V Permit § X and Att. D.

138.     As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), CRRM is liable for injunctive relief and the assessment of civil penalties to the United States of not more than the per-day per-violation amounts set forth in Paragraph 61 above.

139.     As a result of the above-listed violations and pursuant to K.S.A. § 65-3018, CRRM is liable for injunctive relief and the assessment of civil penalties to the State of Kansas of not more than $10,000 per day for each violation.

## SEVENTH CLAIM FOR RELIEF

### Failure to Conduct Performance Test for PM on FCCU
### in Violation of Part 63 NESHAP Subpart UUU

140.     The allegations in Paragraphs 1 through 104 are hereby re-alleged and incorporated by reference as if fully set forth herein.

141.     At all relevant times herein, Part 63 NESHAP Subpart UUU and the 2017 Title V Permit required CRRM to conduct a performance test on the Refinery's FCCU for PM no later

than August 1, 2017 in accordance with the requirements in Subpart UUU Table 4.  40 C.F.R. § 63.1571(a)(5) and Table 4; 2017 Title V Permit § X and Att. D.

142.    At all relevant times herein, Table 4 to NESHAP Subpart UUU required compliance with EPA Test Method 5 or Test Method 5F for PM performance tests conducted pursuant to 40 C.F.R. § 63.1571(a)(5).  Part 63 NESHAP Subpart UUU Table 4, Row 2.

143.    On July 31, 2017, CRRM conducted a performance test on the Refinery's FCCU for PM emissions.

144.    CRRM elected to comply with Test Method 5F in the PM performance test it conducted on July 31, 2017.

145.    At all relevant times herein, Test Method 5F required that a leak check be conducted at the conclusion of each sampling run and if a component change becomes necessary during a sampling run.  40 C.F.R. Part 60 Appendix A-3, Test Method 5F § 8.0 (incorporating Test Method 5 requirements).

146.    At all relevant times herein, Test Method 5F required that PM is to be withdrawn isokinetically from the source and collected on a filter maintained at a temperature in the range of 160±14 °C (320±25 °F).  40 C.F.R. § 60 Appendix A-3, Test Method 5F § 8.1.

147.    In the July 31, 2017 performance test on the Refinery's FCCU, CRRM did not conduct leak checks in compliance with Test Method 5F in violation of Part 63 NESHAP Subpart UUU, 40 C.F.R. § 63.1571(a)(5); 2017 Title V Permit § X and Att. D.

148.    In the July 31, 2017 performance test on the Refinery's FCCU, CRRM did not maintain the probe outlet and filter temperatures in the range of 160±14 °C (320±25 °F) in accordance with Test Method 5F in violation of Part 63 NESHAP Subpart UUU, 40 C.F.R. § 63.1571(a)(5); 2017 Title V Permit § X and Att. D.

149.     As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), CRRM is liable for the assessment of civil penalties to the United States of not more than the per-day per-violation amounts set forth in Paragraph 61 above.

150.     As a result of the above-listed violations and pursuant to K.S.A. § 65-3018, CRRM is liable for the assessment of civil penalties to the State of Kansas of not more than $10,000 per day for each violation.

## EIGHTH CLAIM FOR RELIEF

**Failure to Comply with Emissions Inventory Reporting and Pay Fees
in Violation of K.S.A. § 65-3024, K.A.R. § 28-19-202 (as in effect April 1, 2016),
K.A.R. § 28-19-517 (as in effect April 1, 2016), K.A.R. § 28-19-210, and the 2006 Title V
Permit**

151.     The allegations in Paragraphs 1 through 104 are hereby re-alleged and incorporated by reference as if fully set forth herein.

152.     At all relevant times herein, federally enforceable Kansas Title V Regulations and the 2006 Title V Permits required CRRM to estimate $SO_2$ emissions for each year and report such emissions to KDHE.  K.A.R. § 28-19-517 (amended Jan. 5, 2018); 2006 Title V Permit at 10.

153.     At all relevant times herein, federally enforceable Kansas Title V Regulations and the 2006 Title V Permit required CRRM to use the calculation methodology set forth in K.A.R. § 28-19-210 to estimate the $SO_2$ emissions required to be reported by the authorities set forth in Paragraph 153 above.  K.A.R. § 28-19-202(a) (repealed Jan. 5, 2018); 2006 Title V Permit at 10.

154.     At all times relevant herein, K.A.R. § 28-19-210 required that calculations of actual emissions from any emissions unit or stationary source must be made using either (1) data generated from a continuous monitoring system, (2) approved emissions factors in K.A.R. § 28-19-210(d), (3) material balances specified in K.A.R. § 28-19-210(e), (4) another method

approved by KDHE, (5) potential to emit if no other method qualifies, or (6) any combination of these that most accurately demonstrates emissions, pursuant to the processes and terms of K.A.R. § 28-19-210.

155.    On March 31, 2017, CRRM submitted its 2016 Emissions Inventory Report (2016 EIR) to KDHE.  CRRM reported 150 tons of $SO_2$ emitted from all units, including 10.88 tons from the Alky Flare, 2.8230848 tons from the Coker Flare, and 15.054406 tons from the CWP Flare.

156.    The  2016 EIR submitted to KDHE did not report accurate $SO_2$ emissions calculated in accordance with the methodologies set forth in KAR § 28-19-210 in violation of federally enforceable Kansas Title V Regulations and the 2006 Title V Permit.  *See* , K.A.R. § 28-19-202 (repealed Jan. 5, 2018);  K.A.R. § 28-19-210; 2006 Title V Permit at 10.

157.    CRRM's failure to submit an accurate emissions inventory in compliance with the calculation processes required by K.A.R. § 28-19-210 resulted in it avoiding applicable fees in violation of K.A.R. § 28-19-202 (repealed Jan. 5, 2018) and K.S.A. §§ 65-3024, 65-3025(c).

158.    Based on a reasonable opportunity for further investigation or discovery, unless restrained by the Court, these violations will continue.

159.    As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), CRRM is liable for injunctive relief and the assessment of civil penalties to the United States of not more than the per-day per-violation amounts set forth in Paragraph 61 above.

160.    As a result of the above-listed violations and pursuant to K.S.A. § 65-3018, CRRM is liable for injunctive relief and the assessment of civil penalties to the State of Kansas of not more than $10,000 per day for each violation.

161.    As a result of the above-listed violations and pursuant to K.A.R. § 28-19-202 (repealed Jan. 5, 2018);, CRRM is liable for payment of a late fee of $20 per day or 0.10 percent of the annual emissions fee per day, whichever is greater.

### NINTH CLAIM FOR RELIEF

**Failure to Report Exceedances of H2S Concentration Limit on the
Coker Flare and CWP Flare in Violation of the 2017 Title V Permit**

162.    The allegations in Paragraphs 1 through 104 are hereby re-alleged and incorporated by reference as if fully set forth herein.

163.    Since August 8, 2006, pursuant to K.A.R. § 28-19-512(a)(11)(B), the 2006 and 2017 Title V Permits required that CRRM report to KDHE any deviations from Title V Permit requirements that result in an emissions exceedance by phone the next business day and then in writing within five days.  2006 Title V Permit at 14, 2017 Title V Permit § XIII.

164.    From November 11, 2015 through the present, CRRM has failed to report deviations with required detail, including probable cause and any corrective actions or preventive measures taken, to KDHE by phone by the next business day or by writing within five days any of the emissions exceedances described in Paragraphs 107 and 115 above in violation of K.A.R. 28-19-512(a)(11); the 2006 Title V Permit, 14, and 2017 Title V Permit § XIII.

165.    Based on a reasonable opportunity for further investigation or discovery, unless restrained by the Court, these violations will continue.

166.    As a result of the above-listed violations and pursuant to K.S.A. § 65-3018, CRRM is liable for injunctive relief and the assessment of civil penalties to the State of Kansas of not more than $10,000 per day for each violation that occurred on or after January 17, 2017.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the United States and the State of Kansas, respectfully request that this Court:

A.     Order CRRM to undertake actions necessary to comply with the statutory, regulatory, and permit requirements cited in this Complaint under the CAA;

B.     Order CRRM to mitigate all excess emissions caused by the violations alleged herein;

C.     Assess civil penalties against CRRM for up to the maximum amounts provided in the applicable statutes and regulations for the violations alleged herein;

D.     Require CRRM to pay KDHE fees for emissions not reported in its emissions inventories;

E.     Award Plaintiffs their costs and expenses incurred in this action; and

F.     Grant such other and further relief as may be just and proper and as the public interest and the equities of the case may require.

Respectfully submitted,

JONATHAN D. BRIGHTBILL
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources
Division

s/ Elizabeth L. Loeb
ELIZABETH L. LOEB
NY Bar Number 2294809
Senior Attorney
JOANNA CITRON DAY
DC Bar Number 477833
Senior Counsel
HELEN LI
CT Bar Number 439117
Trial Attorney
Environmental Enforcement Section

P.O. Box 7611
Washington, DC 20044-7611
Phone:  (202) 616-8916
Fax:  (202) 616-6584
elizabeth.loeb@usdoj.gov
joanna.day@usdoj.gov
helen.li2@usdoj.gov

*Attorneys for the United States*

STEPHEN R. MCALLISTER
United States Attorney
District of Kansas

EMILY METZGER
Assistant United States Attorney
301 North Main Street
Wichita, Kansas 67212
(316) 269-6481
Emily.Metzger@usdoj.gov
Kansas Supreme Court Number 10750

OF COUNSEL:

Britt Bieri
Shane McCoin
Assistant Regional Counsel
United States Environmental Protection Agency
Region 7
Lenexa, Kansas 66219

Sabrina Argentieri
Attorney Advisor
Air Enforcement Division
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
Washington, D.C. 20004

For the State of Kansas and the Kansas Department of Health and Environment

s/ Kate J. Gleeson
Kate J. Gleeson, No. 25518
Senior Environmental Attorney
Special Assistant Attorney General
Kansas Department of Health and Environment
1000 S.W. Jackson, Suite 560
Topeka, Kansas 66612
(785) 296-1607
(785) 559-4272 (fax)
kate.gleeson@ks.gov

## REQUEST FOR PLACE OF TRIAL

Plaintiffs request that the above-titled cause be placed on the docket for trial at the

City of Wichita, Kansas.

Respectfully submitted,


 s/ Elizabeth L. Loeb
ELIZABETH L. LOEB
U.S. Department of Justice
Environment and Natural Resources
Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THE UNITED STATES OF AMERICA,      )
                                   )
        AND                        )
                                   )
THE STATE OF KANSAS, ex rel.       )
KANSAS DEPARTMENT OF               )      Civ. No. 6:04-cv-01064
HEALTH AND ENVIRONMENT,            )
                                   )
        Plaintiffs                 )
                                   )
        v.                         )
                                   )
COFFEYVILLE RESOURCES              )
REFINING & MARKETING, LLC          )
                                   )
        Defendant.                 )
_____)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of December, 2020, I electronically filed the

foregoing **FIRST SUPPLEMENTAL COMPLAINT**, Case No. 6:04-cv-01064, with the clerk

of the court by using the CM/ECF system which will send a notice of electronic filing to the

following:  Eliot L. Kaplan and LeAnn Johnson Koch.

s/ Elizabeth L. Loeb
ELIZABETH L. LOEB
NY Bar Number 2294809
Senior Attorney
JOANNA CITRON DAY
DC Bar Number 477833
Senior Counsel
HELEN LI
CT Bar Number 439117
Trial Attorney
Environmental Enforcement Section
P.O. Box 7611
Washington, DC 20044-7611
Phone:  (202) 616-8916
Fax:  (202) 616-6584
elizabeth.loeb@usdoj.gov