IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF KANSAS, ex rel. KANSAS DEPARTMENT OF HEALTH AND ENVIRONMENT,<br><br>Plaintiffs,<br><br>v.<br><br>COFFEYVILLE RESOURCES REFINING & MARKETING, LLC,<br><br>Defendant. | Case No. 04-1064-JAR-KGG |

### MEMORANDUM AND ORDER

On April 5, 2021, Defendant Coffeyville Resources Refining & Marketing, LLC ("CRRM") filed a Petition for Judicial Review (Doc. 40), seeking this Court's review of the decision by Plaintiffs United States of America and the State of Kansas to assess stipulated penalties under a 2012 Consent Decree. Before the Court is CRRM's request in its petition for limited discovery and staged briefing to address its points of error in Plaintiffs' stipulated penalties assessment. As described more fully below, CRRM's request for discovery is denied and the Court sets a briefing schedule on the remaining merits-based challenges.

**I.      Factual and Procedural Background**

CRRM owns and operates a petroleum refinery located in Coffeyville, Kansas ("Refinery"). The Refinery processes crude oil into refined petroleum products, including propane, gasoline, distillates, and petroleum coke. Among numerous process units at the Refinery are the following three flares: the Coker flare ("Coker Flare"), cold water pond flare ("CWP Flare"), and an alky flare. Flares are open air combustion devices that destroy refinery waste gas, resulting in emissions of various air pollutants including sulfur dioxide ($SO_2$).

CRRM purchased the Refinery from the Farmland Industries' bankruptcy estate in 2004. Immediately prior to the purchase, Plaintiffs United States of America and the State of Kansas, by and through the Kansas Department of Health and the Environment ("KDHE"), entered into a consent decree with CRRM ("2004 CD") that resolved some, but not all, Clean Air Act ("CAA") violations at the Refinery.[1]  In 2012, Plaintiffs and CRRM entered into the Second Consent Decree ("2012 CD")[2] under the EPA's National Petroleum Refining Initiative ("NPRI"), which sought to reduce emissions and "level the playing field" across all American refineries.  The 2012 CD contains a provision for stipulated civil penalties that CRRM must pay for "each failure to comply with the terms of this Consent Decree."[3]

At issue in this case is the 2012 CD's requirement that CRRM comply with the New Source Performance Standards ("NSPS"),[4] regulations promulgated by EPA pursuant to Section 111 of the CAA: Subparts J[5] and Ja.[6]  These regulations limit the amount of hydrogen sulfide ("$H_2S$") concentration in the gas that is flared because it forms $SO_2$ when combusted, compromising respiratory health, harming vegetation, and decreasing plant growth.  The regulations also require refineries to monitor the $H_2S$ concentration in the gas being flared. Subpart Ja requires monitoring of other parameters including gas flow to each flare, performance tests and evaluations of monitoring equipment, adherence to monitoring equipment quality assurance and calibrations requirements, and submission of flare management plans to EPA.

---

[1] Doc. 8.

[2] Doc. 14.

[3] Doc. 14 ¶ 180.a.  The Honorable Monti L. Belot presided over this case when it was filed in 2004 and signed the consent decrees.  This case was eventually reassigned to the undersigned on May 3, 2021, after the pending motions were filed.

[4] *Id.* ¶¶ 60–61.

[5] 40 C.F.R. § 60.100, *et seq.*

[6] 40 C.F.R. § 60.100a, *et seq.*

The pending Petition for Judicial Review challenges Plaintiffs' assertion that CRRM violated paragraphs 60 and 61 of the 2012 CD at the Coker and CWP Flares. On June 19, 2020, pursuant to paragraph 202 of the 2012 CD, Plaintiffs demanded stipulated penalties from CRRM for twenty-four different types of violations, eighteen of which were violations of Subparts J and Ja requirements. The parties engaged in informal dispute resolution as required under the 2012 CD. On January 8, 2021, after unsuccessful attempts to resolve the disputes informally, Plaintiffs sent CRRM a written notice ceasing informal dispute resolution in accordance with the 2012 CD. Plaintiffs then served their Statement of Position ("SOP") on CRRM setting forth their decision that CRRM is liable for $6,819,600 in stipulated penalties (a reduction in stipulated penalties from the earlier demands). CRRM ceased disputing one claim and paid $2,600 in stipulated penalties for that claim, bringing the total stipulated penalty demand to $6,817,000.

Before the informal dispute resolution had concluded as to the 2012 CD, Plaintiffs filed the First Supplemental Complaint on December 28, 2020.[7] It alleges violations of the CAA, Kansas Air Quality Act ("KAQA"), and regulations "based on transactions, occurrences, and events that occurred after the filing of the original Complaint."[8] It alleges nine counts; Counts 1 and 2 "are also violations of the 2012 Consent Decree."[9] CRRM has separately moved to dismiss the civil penalties sought in all nine claims and moves to dismiss Count 9 in its entirety, and that motion remains pending.

The 2012 CD provides that Plaintiffs' SOP is binding unless Defendant files a Petition for Review within sixty days of Plaintiffs' Statement of Position. On April 5, 2021, CRRM

---

[7] Doc. 32.
[8] *Id.* ¶ 5.
[9] *Id.* ¶ 7.

timely filed a petition requesting that the Court review eighteen claims in the SOP for stipulated penalties.[10]

## II. Pending Motion for Judicial Review

CRRM's petition seeks judicial review as provided under paragraph 221 of the 2012 CD:

> Within thirty (30) days of the date that informal negotiations cease pursuant to Paragraph 220 above, the United States and KDHE shall provide CRRM with a written summary of their position(s) regarding the dispute. The position advanced by the United States and State shall be considered binding unless, within sixty days of a Defendant's receipt of the written summary of the United States' position, that Defendant files with the Court a petition which describes the nature of the dispute. The United States shall respond to the petition within forty-five (45) calendar days of filing. In the event that the United States and KDHE make differing determinations or take differing actions that affect a Defendant's rights or obligations under this Consent Decree, the final decision of the United States will take precedence.

In its Petition for Judicial Review, CRRM sets forth "the nature of the dispute" in general terms, but requests that the Court set a bifurcated briefing schedule to address its legal challenges in more detail and allow it to conduct limited discovery. Specifically, CRRM asked the Court to bifurcate briefing on (1) four "threshold legal issues" that apply only to Claims 3–18, followed by (2) disputes over the merits of Plaintiffs' claims for stipulated penalties only if the Court does not rule in its favor on the threshold legal issues raised in the first round of briefing. CRRM also asked the Court to allow it limited discovery regarding Claims 1 and 2. Plaintiffs oppose bifurcation and discovery, claiming that they are delay tactics and not provided for under the 2012 CD. The Court first addresses CRRM's request for discovery since that ruling will dictate whether its request for staged briefing with deadlines tied to that discovery is warranted.

---

[10] Doc. 40.

A.      **CRRM's Request for Discovery**

CRRM requests that the Court allow it to conduct limited discovery related to Claims 1 and 2 in the SOP, which allege that CRRM failed to install and operate a $H_2S$ continuous emissions monitoring system at the CWP and Coker flares between April 20, 2012 and November 11, 2015. CRRM argues that Plaintiffs have used EPA's subpoena authority under § 114 of the CAA "to engage in a one-sided investigation" of the claims, whereas CRRM has had no opportunity to investigate. CRRM asks for "targeted" interrogatories, requests for production, and depositions regarding Plaintiffs' prior understanding of the location of the $H_2S$ monitor given that Plaintiffs never raised the issue before 2016, despite multiple prior investigations and two consent decrees. CRRM maintains that discovery is likely to yield evidence relevant to the affirmative defenses of estoppel and laches and would "level the playing field" between the parties.

Plaintiffs ask the Court to deny the request for discovery. First, they urge that because the scope of review on the petition is not specified in the 2012 CD, the Court should default to the standard under the Administrative Procedures Act ("APA")—whether the "agency's decision" is "arbitrary and capricious."[11] In line with this scope of review, Plaintiffs urge that their January 8, 2021 SOP is the "agency's final decision," and therefore, review should be limited to the "record" of the dispute, i.e. the documents exchanged between the parties during the informal dispute resolution process. Second, Plaintiffs urge that discovery is unlikely to uncover relevant evidence. Third, Plaintiffs ask that if the Court grants discovery, it be limited and reciprocal.

---

[11] *See Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 496–97 (2004).

Although the Court is skeptical that the APA's standard of review applies to CRRM's petition given that it is not provided for in the 2012 CD,[12] the Court need not resolve this question at this time because assuming the general standard set forth in Fed. R. Civ. P. 26(b) applies, discovery is not warranted. Under Fed. R. Civ. P. 26(b)(1), "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Relevance is "'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on' any party's claim or defense."[13]

Here, CRRM seeks discovery bearing on two affirmative defenses: estoppel and laches. According to CRRM, Plaintiffs should have known that CRRM failed to install and operate a $H_2S$ continuous emissions monitoring system at the CWP and Coker flares between April 20, 2012 and November 11, 2015 well before 2016, when they received data from CRRM after new monitors were installed on the flare headers. CRRM intends to argue that Plaintiffs either approved of the location of the monitor and then reversed course, or that they unreasonably delayed in pursuing their NSPS Subpart J claims.

Plaintiffs respond that CRRM cannot assert the affirmative defenses of estoppel and laches against the government even if it proves that there was some delay. CRRM acknowledges

---

[12] *See id.* (applying APA standard of review where the statutory provision governing EPA's authority did not specify a standard for judicial review); *Sinclair Oil Corp. v. Scherer*, 7 F.3d 191, 193 (10th Cir. 1993) (holding that where the request for judicial review involves construction of the consent decree, the Court is to construe it "for enforcement purposes basically as a contract, the terms of the decree and the respective obligations of the parties must be found within the four corners of the consent decree." (quoting *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975) (citation omitted)); *United States v. Sanitary Dist. of Hammond*, No. 2:93-CV-225-JTM-PRC, 2012 WL 6599919, at *6–7 (N.D. Ind. Dec. 18, 2012) (applying APA standard of judicial review where consent decree with EPA explicitly provided for it); *United States v. Minnkota Power Co-op, Inc.*, 831 F. Supp. 2d 1109, 1118–19 (D.N.D. 2011) (applying standard of review specified in consent decree: "The Court shall sustain the decision by NDDH unless the Party disputing the BACT Determination demonstrates that it is not supported by the state administrative record and not reasonable in light of applicable statutory and regulatory provisions.").

[13] *Williams v. UnitedHealth Grp.*, No. 2:18-cv-2096, 2020 WL 528604, at *2 (D. Kan. Feb. 3, 2020) (citations omitted).

that these defenses carry a heavier burden when lodged against the government, but argues that they are not precluded as a matter of law and that it should at least be permitted to conduct discovery to determine if it can support the defenses. The Court agrees with Plaintiffs that these defenses are most likely unavailable to CRRM. "Since at least 1940, 'the general rule [has been] that the United States is not "subject to the defense of laches in enforcing its rights."'"[14] Although there are some limited exceptions in specific cases, "the Tenth Circuit has generally declined to expand on those exceptions."[15] Similarly, "it is well settled that the Government may not be estopped on the same terms as any other litigant."[16] And "courts invoke the doctrine of estoppel against the government with great reluctance."[17] The defense requires "active misleading by the government agent" and "actual reliance by the defendant."[18]

While it may be true that these defenses are not precluded as a matter of law, CRRM must be able to show that the discovery it seeks bears on or is reasonably likely to lead to information that bears on these defenses under the very limited circumstances in which they may be applied to the government. CRRM's motion for discovery wholly fails to make this showing. While CRRM maintains that it does not intend to flood Plaintiffs with needless discovery and seeks to issue only targeted discovery requests, it makes no attempt in its briefing to explain how it plans to target discovery given the very limited exceptions upon which any laches or estoppel

---

[14] *FTC v. Superior Prods. Int'l II, Inc.*, No. 2:20-cv-02366-HLT-GEB, 2020 WL 7480390, at *2 (D. Kan. Dec. 18, 2020) (quoting *FDIC v. Hulsey*, 22 F.3d 1472, 1490 (10th Cir. 1994)) (citations omitted).

[15] *Id.* (citing *Hulsey*, 22 F.3d at 1490 ).

[16] *Heckler v. Comm'y Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60 (1984).

[17] *United States v. Allen*, 983 F.3d 463, 470 (10th Cir. 2020) (quoting *United States v. Guiterrez-Gonzalez*, 184 F.3d 1160, 1166 (10th Cir. 1999)).

[18] *Id.* (quoting *United States v. Nichols*, 21 F.3d 1016, 1018 (10th Cir. 1994)).

defense would be permitted in this case. As such, CRRM fails to show that discovery is warranted and its request is therefore denied.

### B. Briefing Deadlines

In the initial brief, CRRM asked the Court to bifurcate briefing on (1) four "threshold legal issues" that apply only to Claims 3–18, followed by (2) disputes over the merits of Plaintiffs' claims for stipulated penalties if the Court does not rule in its favor on the threshold legal issues raised in the first round of briefing, as well as any issues that may arise after CRRM conducts limited discovery on Claims 1 and 2. In the response, Plaintiffs addressed the merits of CRRM's threshold legal challenges, and urged the Court not to allow CRRM to delay briefing on the merits of Plaintiffs' stipulated penalty claims.

CRRM filed a substantive reply as to the four threshold legal issues addressed in Plaintiffs' response and asks the Court in the reply to rule on those issues  If the Court rules in favor of CRRM on any of the four threshold legal issues, CRRM asks that the Court "remand" the dispute back to the parties and require Plaintiffs to issue a stipulated penalty demand that complies with the 2012 CD. If the Court rules against CRRM on these threshold legal issues, it asks that the Court enter a scheduling order on the merits of Plaintiffs' individual claims as follows: CRRM's opening brief would be due 30 days from the Court's ruling; the response would be due within 30 days of opening brief; and CRRM's reply would be due within 15 days of the response. CRRM asks for "additional briefing on those claims after the 120-day discovery period closes."[19]

In sum, it appears that CRRM seeks potentially three rounds of briefing on its challenges to Plaintiffs' eighteen claims for stipulated penalties based on CRRM's violations of the 2012

---

[19] Doc. 56 at 29.

CD Paragraphs 60 and 61: (1) the current briefing on threshold legal issues; (2) briefing on the merits of individuals claims; and (3) additional briefing after discovery closes. The Court will allow CRRM an opportunity to fully brief its merits-based challenges, but declines to impose the protracted deadlines proposed by CRRM in the reply. Briefing on the Petition for Judicial Review shall proceed as follows:

(1) The Court considers the first round of "threshold legal issues" raised in CRRM's petition fully briefed and under advisement. Both parties addressed them substantively in this round of briefing in the response and reply, and CRRM affirmatively requests a ruling at the conclusion of its reply.

(2) The Court finds no basis for delaying the merits briefing until after the parties receive a ruling on the threshold legal issues. There is no authority in either the 2012 CD or the caselaw for "remanding" this case back to the parties for informal negotiations if the Court rules in favor of CRRM on any of the threshold legal issues, which only apply to Claims 3–18. Moreover, given the Court's ruling denying CRRM's motion for discovery, there is no reason to delay briefing on the basis of a discovery deadline. Instead, the Court orders briefing on the merits to proceed forthwith.

(3) CRRM's opening merits brief is due 30 days from the date of this Order; Plaintiff's response brief is due 30 days from receipt of the opening brief; CRRM's reply (if any) is due 14 days after receipt of the response. The parties shall abide by the page limitations set forth in D. Kan. Rule 7.1(e). At the conclusion of this briefing, CRRM's Petition for Judicial Review shall be considered fully briefed on all challenges to Plaintiffs' SOP.

**IT IS SO ORDERED.**

Dated: September 23, 2021

<u>S/ Julie A. Robinson</u>
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE