N THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF KANSAS ex rel. KANSAS DEPARTMENT OF HEALTH AND ENVIRONMENT,<br><br>Plaintiffs,<br><br>v.<br><br>COFFEYVILLE RESOURCES REFINING & MARKETING, LLC,<br><br>Defendant. | Case No. 04-cv-1064-JAR-KGG |

# MEMORANDUM AND ORDER

This civil action was brought by Plaintiffs United States of America and the State of Kansas by and through the Kansas Department of Health and Environment (the "State") against Defendant Coffeyville Resources Refining & Marketing, LLC ("CRRM") under Section 113(b) of the Clean Air Act ("CAA") and K.S.A. § 65-3005, for violations of the CAA, the Kansas Air Quality Act ("KAQA"), various federal and state regulations, and federal and state permits at CRRM's petroleum refinery located in Coffeyville, Kansas ("Refinery").

On April 19, 2012, the parties entered into their Second Consent Decree ("2012 Consent Decree"), which was approved by the Court.[1]  On June 19, 2020, pursuant to paragraph 202 of the 2012 Consent Decree, Plaintiffs demanded stipulated penalties from Defendant for violations of federal CAA regulations.  The parties engaged in informal dispute resolution as required, but were unable to resolve the disputes informally, and Defendant sought judicial review of the dispute.  On March 30, 2022, this Court denied Defendant's petition for judicial review.

---

[1] Doc. 14.

In the meantime, on December 28, 2021, Plaintiffs filed a First Supplemental Complaint under Fed. R. Civ. P. 15(d), alleging nine new claims "based on transactions, occurrences, and events that occurred after the filing of the original Complaint."[2]  On February 17, 2022, Plaintiffs filed a First Amended Supplemental Complaint ("FASC"), alleging an additional eight claims.[3]  Before the Court is Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 91), in which it seeks to dismiss the State's claims for civil penalties under K.S.A. § 65-3018 in Counts 1 through 17, to dismiss Count 9 in its entirety, and to partially dismiss Count 17.  The motion is fully briefed and the Court is prepared to rule.  As explained more fully below, the Court grants Defendant's motion to dismiss the State's civil penalty demands, but denies its motion to dismiss Count 9 and to partially dismiss Count 17.

I.      Factual Background

CRRM's Refinery processes crude oil into refined petroleum products, including propane, gasoline, distillates, and petroleum coke.  Among numerous process units at the Refinery are the following three flares: the Coker flare ("Coker Flare"), cold water pond flare ("CWP Flare"), and an alky flare.  Flares are open air combustion devices that destroy refinery waste gas, resulting in emissions of various air pollutants including sulfur dioxide ("$SO_2$").

Title V of the CAA,[4] establishes an operating permit program for certain sources that are subject to various CAA requirements including New Source Performance Standards ("NSPS") and National Emission Standards for Hazardous Air Pollutants ("NESHAP") requirements.[5] Under the Title V operating permit program all "applicable requirements" for compliance with

---

[2] Doc. 32 ¶ 5.
[3] Doc. 90.
[4] 42 U.S.C. §§ 7661–7661f.
[5] 42 U.S.C. § 7661a(a).

the CAA, including NSPS and NESHAP requirements, are set forth in one operating permit known as a Title V permit.[6]  The Environmental Protection Agency ("EPA") has approved the State's regulations implementing Title V of the CAA, which are codified at K.A.R. §§ 28-19-500 through 28-19-564.

The Kansas Department of Health and Environment ("KDHE"), acting on behalf of the State of Kansas, issued, modified, and/or reissued the following Refinery Class I operating permits pursuant to Title V of the CAA: Permit No. 265, issued on August 8, 2006, ("2006 Permit"), and Permit No. 9458, issued on January 17, 2017 ("2017 Permit").  The 2017 Permit incorporated the federal and state air pollution-related requirements that apply to CRRM's flares, process heaters, petroleum refining process units, FCCU, fugitive equipment leaks, process vents, and gas loading racks.

Relevant to this motion, the State seeks civil penalties in Counts 1 through 17 under K.S.A. § 65-3025 for violations of the KAQA.  In Count 9, Plaintiffs allege that Defendant failed to report exceedances of the $H_2S$ the concentration limit on the Coker and CWP flares in violation of the 2017 Permit.  And in Count 17, Plaintiffs allege that Defendant failed to report, among other things, deviations of the gasoline loading rack emission standards as required by the 2017 Permit.

**II.     Standard**

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[7]  The plausibility standard does not require a showing of

---

[6] 42 U.S.C. § 7661c(a), 40 C.F.R. § 70.6(a).

[7] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

probability that a defendant has acted unlawfully, but it requires more than "a sheer possibility."[8] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[9] Finally, the Court must accept the plaintiff's factual allegations as true, view those facts in the light most favorable to the plaintiff, and assess whether they give rise to a reasonable inference that the defendant is liable in light of the applicable law.[10]

"The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."[11] If the Court looks to matters outside the pleadings, it generally must convert the motion to a Fed. R. Civ. P. 56 motion for summary judgment.[12] However, the Court may consider documents that are referred to in the complaint if they are central to the plaintiff's claim and the parties do not dispute their authenticity.[13] Here, the Court considers the Title V permits because they are central to the claims in this case.[14]

## III. Discussion

Defendant moves to dismiss the State's claim for civil penalties in Counts 1 through 17, arguing that under K.S.A. § 65-3018, Kansas can only bring civil penalty claims through the state administrative process. Additionally, Defendant moves to dismiss Count 9 on the basis that

---

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[10] *See Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

[11] *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

[12] Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997).

[13] *See Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007); *GFF Corp.*, 130 F.3d at 1384–85.

[14] *See* Doc. 36, Exs. A, B.

it was only required to report the alleged emission exceedances semi-annually, not by the shorter deadlines alleged in the FASC.  Finally, Defendant moves to dismiss a portion of Count 17 because EPA failed to provide it with the requisite 30 days' notice under the CAA before bringing suit.  The Court addresses each asserted basis for dismissal below.

### A.   The State's Request for Civil Penalties in Counts 1 through 17

In Counts 1 through 17, Plaintiffs allege violations of the CAA, federal and state regulations, and the 2006 and 2017 Permits.  Each count seeks an "assessment of civil penalties to the State of Kansas of not more than $10,000 per day for each violation," under the KAQA.[15]  Defendant moves to dismiss on the basis that the State may only pursue civil penalties under the KAQA through the State's administrative process.

#### 1.   Kansas Statutory Provisions

The KAQA is a regulatory scheme to promote air quality conservation and control air pollution in the State of Kansas.[16]  The KDHE is responsible for administering the KAQA.[17]  Under the KAQA, Kansas has adopted by reference Part 63 NESHAP Subpart CC and UU.  And the KDHE has adopted regulations implementing and enforcing the KAQA.[18]  The KAQA makes it unlawful for any person to:

> (a) Violate any provision of an order issued under this act.
>
> (b) Violate any provision of an approval or permit issued under this act.
>
> (c) Violate any provision of this act or any rule and regulation promulgated under this act, unless the secretary makes a determination relating to the permittee that the specified provisions

---

[15] Doc. 90 ¶¶ 144, 152, 157, 162, 167, 172, 183, 193, 199, 204, 210, 216, 223, 232, 239, 245, 253.

[16] *See* K.S.A. § 65-3003.

[17] *Id.*

[18] *See id.* § 65-3005.

referred to in such determination are not applicable to the source and the permit includes that determination or a concise summary thereof.  Compliance with the provisions of a permit shall be deemed compliance with applicable provisions of this act or any rule and regulation promulgated under this act if the permit includes the applicable requirements of such provisions.  Nothing in this subsection (c) or in any permit shall alter or affect: (1) The provisions of section 303 of the federal clean air act (emergency orders), including the authority of the administrator of the United States environmental protection agency under that section; (2) the provisions of K.S.A. 65-3012 and amendments thereto; (3) the liability of an owner or operator of a source for any violation of applicable requirements prior to or at the time of permit issuance; (4) the applicable requirements of the acid rain program consistent with section 408a of the federal clean air act; (5) the ability of the United States environmental protection agency to obtain information from a source pursuant to section 114 of the federal clean air act; or (6) the ability of the secretary to obtain information from a source pursuant to this act.[19]

K.S.A. § 65-3018 provides for administrative penalties as follows:

(a) The secretary or the director of the division of environment, upon a finding that a person has violated any provision of K.S.A. 65-3025 and amendments thereto, may impose a penalty not to exceed $10,000 which shall constitute an actual and substantial economic deterrent to the violation for which it is assessed. In the case of a continuing violation, every day such violation continues shall be deemed a separate violation.

(b) No penalty shall be imposed pursuant to this section except after notice of violation and opportunity for hearing upon the written order of the secretary or the director of the division of environment issued to the person who committed the violation. The order shall state the violation, the penalty to be imposed and the right to request a hearing thereon. The request for hearing shall be in writing, directed to the secretary and filed with the secretary within 15 days after service of the order.  Hearings under this section shall be conducted in accordance with the Kansas administrative procedure act.

(c) Nothing in this act shall be construed to abridge, limit or otherwise impair the right of any person to damages or other relief

---

[19] *Id.* § 65-3025(a)–(c).

>on account of injury to persons or property and to maintain any
>action or other appropriate proceeding therefor.

Defendant contends that § 65-3018(b) requires that the State provide notice and an opportunity for hearing before it may impose civil penalties, and that such hearing must be conducted in accordance with the Kansas Administrative Procedure Act ("KAPA"). Because the State did not follow this procedure, Defendant argues the State's claims for civil penalties must be dismissed. The State responds that other language in the KAQA and KAPA authorize it to act without an administrative hearing. The State first points to K.S.A. § 65-3005(a)(3), which allows the KDHE Secretary to "[i]ssue such orders, permits and approvals as may be necessary to effectuate the purposes of this act and enforce the same by all appropriate administrative and judicial proceedings." And it points to K.S.A. § 77-508, which provides that a hearing is not required "for a decision . . . to initiate or not to initiate an investigation, prosecution or other proceeding before the state agency, another agency or a court."

The Court agrees with Defendant that K.S.A. § 65-3018 governs KDHE's ability to impose civil penalties for violations of the KAQA and that neither statute identified by the State provides an exception here. "When a statute is plain and unambiguous, courts do not speculate as to the legislative intent behind it and will not read the statute to add something not readily found within it. Courts need not resort to statutory construction."[20] Section 65-3018(a) provides that KDHE *may* impose a civil penalty "upon a finding" that a person has violated § 60-3025. Subsection (b) contains a nondiscretionary limit on the KDHE's imposition of a penalty: there *shall* first be "notice of violation and opportunity for hearing upon the written order" of the KDHE secretary issued to the violator. Subsection (b) includes what must be required in this

---

[20] *Kansas v. Casey*, 211 P.3d 847, 849 (Kan. Ct. App. 2009).

order and provides how and when a request for hearing must be made.  Therefore, the plain language of this statute imposes several requirements on the KDHE before it may impose civil penalties: (1) there must be a "finding" of a violation; (2) the Secretary must issue a written order providing notice of the alleged violation; and (3) there must be an opportunity for a hearing conducted in accordance with the KAPA.  The FASC does not constitute a finding that Defendant violated the KAQA; it contains allegations of such violations.  And there are no facts alleged in the FASC showing that KDHE provided an opportunity for hearing on the alleged violations in accordance with the KAPA.

      The State argues that when read alongside other statutory provisions, the Court may find exceptions apply to the requirements of § 65-3018(b).  The State first argues that § 65-3005 provides the KDHE Secretary with broad authority to enforce the KAQA, which is not limited to the State's administrative process.  But the plain language of § 65-3005(a)(3) does not support the State's argument.  Section § 65-3005 generally governs the "[p]owers of the secretary."  One of these enumerated powers is to "[i]ssue such orders, permits and approvals as may be necessary to effectuate the purposes of this act and enforce the same by all appropriate administrative and judicial proceedings."[21]  Yet, the State points the Court to no "order, permit or approval" that KDHE has "issued," outside of the FASC in this case, to enforce the KAQA.  And while the language of § 65-3005 broadly discusses KDHE's ability to enforce the KAQA, § 65-3018 specifically addresses civil penalties and unambiguously requires the KDHE to provide notice and an opportunity for hearing in a written order.  The statute provides that the hearing must be conducted in accordance with the KAPA.

---

[21] K.S.A. § 65-3005(a)(3).

Moreover, the hearing requirement in § 65-3018 is consistent with another enumerated power of the Secretary itemized in § 65-3005: to "[h]old hearings relating to any aspect of or matter in the administration of this act concerning air quality control, and in connection therewith, compel the attendance of witnesses and the production of evidence."[22] Reading these statutes together and giving them their plain meaning, the KDHE Secretary's powers do not include avoiding the civil penalty order and hearing requirements of § 65-3018(b) by initiating a lawsuit in federal court.

Similarly, § 77-508, which is part of the KAPA, does not provide an exception to § 60-3018(b), at least under the circumstances of this case. That statute provides an exception for the KAPA hearing requirement for decisions "to initiate or not to initiate an investigation, prosecution or other proceeding before the state agency, another agency or a court." Here, KDHE is seeking civil penalties for violations of the KAQA based on facts alleged in a federal court pleading that occurred after the 2012 Consent Decree. Even assuming that KDHE's participation in this lawsuit is a "decision to initiate a proceeding" in federal court, that is wholly separate from its "decision" to impose civil penalties upon a finding of KAQA violations. K.S.A. § 65-3018 squarely governs the KDHE's decision to impose civil penalties for violations of the KAQA, and requires a finding of violation, and an order providing notice and an opportunity for hearing under the KAPA before such penalties may be imposed.[23] Nothing in § 77-508 alters those requirements here.

---

[22] *Id.* § 65-3005(a)(2).

[23] The State suggests that it could issue an order if and when a judgment is entered in this case finding that Defendant violated the KAQA, at which point the requirements in § 65-3018(b) would kick in. Whether KDHE may issue such an order at a later time, or separately, is not before the Court. The issue before the Court is limited to determining whether the State's civil penalty demands, as alleged in Counts 1 through 17, are subject to dismissal as a matter of law.

2.      *Espinosa*

Defendant maintains that the administrative process is the exclusive means by which the State can recover civil penalties based on the Tenth Circuit's decision in *Espinosa v. Roswell Tower, Inc*.[24] In *Espinosa*, the court considered whether the New Mexico Environmental Department ("NMED") and its Secretary could invoke federal jurisdiction to seek *federal* penalties under the CAA after it prevailed in a state enforcement suit for the same conduct.[25] After examining the plain language of the applicable CAA provision, the court held that the NMED could not bring an enforcement action in federal court after bringing a state court action based on the same violation.[26]

The procedural posture of this case is different than in *Espinosa* and Defendant's basis for dismissal is distinguishable. Unlike in *Espinosa*, the State here did not previously bring an enforcement action in state court based on the same violations alleged in the FASC, and Kansas does not now seek federal penalties for those same violations. Instead, the State seeks civil penalties under the KAQA, Kansas's implementing regulations, and the 2017 Permit, concurrently with the United States' claims for violations of the CAA and federal regulations. Therefore, unlike in *Espinosa*, the State's civil penalty demands are not brought under the CAA, and they do not follow a state court judgment on the basis of the same violations. Nonetheless, this Court has already found that under the plain language of the Kansas statute governing the State's civil penalty demand in this case, the State may not recover civil penalties without first providing an order and opportunity for hearing in accordance with KAPA. Thus, the Court

---

[24] 32 F.3d 491 (10th Cir. 1994).

[25] *Id.* at 492–93.

[26] *Id.* at 493.

agrees with Defendant that the State may not, as a matter of state law, demand civil penalties under the KAQA as part of its prayer for relief in this case.[27]

### 3. Citizen Suit Provisions

To the extent the State now contends that it can seek federal civil penalties under the CAA citizen suit provisions, it also fails to state a claim. Nothing in the FASC indicates that the State seeks civil penalty claims under federal, rather than state law, and the United States is pursuing claims for federal penalties. The Court agrees with Defendant that although the State can intervene in this action, there is no authority that allows it to bring civil penalty claims under federal law.[28] Under each claim in the FASC, the State alleges that Defendant is liable for civil penalties "*to the State of Kansas*,"[29] and cites the KAQA. The United States separately pleads that Defendant is liable for civil penalties "*to the United States*"[30] under 42 U.S.C. § 7413(b), and that demand is not the subject of this motion. This motion, and the Court's ruling, is limited to the State's assertions that Defendant is liable for civil penalties under state law. And because the Court finds that these state law civil penalty demands must be dismissed for failure to state a claim, it need not determine whether the State's claims for civil penalties under Counts 14, 15, and 17 should also be dismissed for lack of sufficient notice under 42 U.S.C. § 7604(b)(1) and 40 C.F.R. § 54.3(b).

---

[27] The principle of pendant jurisdiction does not save the State's civil penalty claims because the Court dismisses the state law civil penalty claims for failure to state a claim upon which relief may be granted under Rule 12(b)(6), not for lack of subject matter jurisdiction under Rule 12(b)(1).

[28] *See* 42 U.S.C. § 7604(a), (g); *see Espinosa*, 32 F.3d at 492–93.

[29] *See, e.g.*, Doc. 90 ¶ 144 (emphasis added).

[30] *See, e.g.*, *id.* ¶ 143 (emphasis added).

   **4.**  **Waiver**

The State argues that Defendant waived its right to challenge the State's civil penalty demand by entering into the 2012 Consent Decree and by not opposing Plaintiffs' request to file and then amend their supplemental complaint. The State's waiver argument is misplaced. First, the 2012 Consent Decree, entered on April 19, 2012, provides that the Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1345, 1355 and 1367(a) and that "[t]he Complaint states a claim upon which relief may be granted."[31] The 2012 Consent Decree settled the claims alleged in the United States' 2004 Complaint and the State's Intervenor Complaint, and this provision does not prohibit Defendant from moving to dismiss the FASC, which was filed years later based on violations that occurred after the 2012 Consent Decree. Indeed, the entire point of a supplemental pleading is to allege claims based on facts "that happened after the date of the pleading to be supplemented."[32] As Defendant aptly points out, KDHE's original claims did not seek civil penalties under state law.[33]

Likewise, Defendant's failure to oppose Plaintiffs' motion for leave to file a supplemental complaint, and later for leave to file the FASC, does not mean that Defendant waived its right to move for dismissal of the State's civil penalty demands. In response to both requests for leave to amend, Defendant expressly reserved its right to move for dismissal of the claims asserted in those pleadings, and to raise "any and all available defenses in response to the first supplemental complaint."[34]

---

[31] Doc. 14 at 5–6 ¶ 1.

[32] Fed. R. Civ. P. 15(d).

[33] *See* Doc. 4 (seeking injunctive relief to require compliance).

[34] Docs. 30, 88, 89.

12

For the reasons stated above, the Court grants Defendant's motion to dismiss the State's civil penalty demands in Counts 1 through 17 of the FASC for failure to state a claim.

**B.     Count 9**

Count 9 alleges that Defendant failed to report certain emission exceedances in compliance with the 2006 and 2017 Permits.  Specifically, the FASC alleges:

> From November 11, 2015 through the present, CRRM has failed to report deviations with required detail, including probable cause and any corrective actions or preventive measures taken, to KDHE by phone by the next business day or by writing within five days of any of the emissions exceedances described in Paragraphs 139, 147, 207 (except the Alky Flare exceedances), 213 (except the Alky Flare exceedances), 229, 242, in violation of K.A.R. 28-19-512(a)(11); the 2006 Title V Permit at 14, and 2017 Title V Permit § XIII.[35]

The paragraphs cross-referenced in this allegation are to the emissions exceedances alleged in Counts 1–2, 11–12, 14, and 16.  Defendant argues that this claim must be dismissed because the permits provided for semi-annual reporting of these emission deviations rather than the shorter reporting deadlines alleged in Count 9.

Section XIII of the 2017 Permit provides in relevant part as follows:

> *Unless a different time period is specified in this permit*, deviations from the requirements of this permit shall be reported to the KDHE as follows:
>
> - Deviations which result in emissions exceeding those allowed in this permit shall be reported the next business day following the discovery of the release, with follow-up written notice within five business days following discovery of the release.  The report shall include the probable cause of such deviations and any corrective actions or preventive measures taken.
>
> - Deviations which do not result in emissions exceeding those allowed in this permit shall be reported in writing

---

[35] Doc. 90 ¶ 197.

> within ten business days following discovery of the deviation.[36]

Its predecessor, the 2006 Permit, contains identical reporting requirements and deadlines, and contains the same opening statement.[37]

Defendant moves for dismissal on the basis that the reporting deadlines in these provisions do not apply to the emission exceedances alleges in Counts 1–2, 11–12, 14, and 16. Defendant highlights the opening language of Section XIII—"unless a different time period is specified in this permit"—and maintains that other provisions in the permits specify semi-annual reporting by incorporating reporting standards in the federal regulations, instead of the default deadlines contained in Section XIII. The State responds that the deadlines in Section XIII apply notwithstanding the provisions cited by Defendant. The State further points out that its claim in Count 9 does not merely allege untimely reporting of these emissions exceedances; it also alleges that Defendant failed to report with the requisite detail required by the Permits.

The Court declines to dismiss this claim on the basis that a semi-annual reporting deadline applies instead of the deadlines set forth in Section XIII of the 2017 Permit. Even if a different time period is specified elsewhere in the Permits, as Defendant urges, the FASC alleges not only that Defendant failed to timely report these emission exceedances, but also that Defendant failed to report them with the requisite detail, including probable cause and any corrective actions or preventive measures taken. Defendant argues in the reply that under the KAQA, the State cannot require it to comply with more stringent standards than what is required under the federal regulations, but this is a wholly different basis for dismissal than what was

---

[36] Doc. 36-2 at 15 (emphasis added).

[37] Doc. 36-1 at 17.

argued in its opening brief.[38]  The Court declines to address this new argument because Defendant has not had an opportunity to address it.  Therefore, the Court denies the motion to dismiss Count 9.  As alleged, it states a plausible claim for relief even if the reporting time periods are semi-annual, as urged by Defendant.

    **C.**    **Count 17**

Count 17 alleges that Defendant failed to report certain deviations from Permit requirements semi-annually, as required by the Permits and applicable federal regulations.  This claim alleges two types of reporting failures: (1) exceedances of the .025 lb/MMbtu NOx limit for the No. 2 Crude Charge Heater during several reporting periods; and (2) exceedances of the gas loading rack emissions limit in Part 63 NESHAP Subpart CC by failing to maintain a minimum combustion temperature of 1,000˚F.  Defendant moves to partially dismiss Count 17 based on the second alleged reporting failure related to the gas loading rack emissions limit.  According to Defendant, EPA failed to provide it with 30 days' notice of its claim that Defendant failed to disclose these deviations, which is a jurisdictional prerequisite to suit.  EPA responds that notice is not jurisdictional and should be construed liberally.  Under a liberal construction standard, EPA argues that it provided sufficient notice to proceed with this claim.

The parties agree that under the CAA, EPA must provide notice to Defendant and the State of the alleged violations before it can bring an enforcement action.[39]  Other district courts to consider the sufficiency of EPA's notice of violation ("NOV") explain that it can raise claims in an enforcement action "only on the basis of the specific violation alleged in the NOV[,]" but

---

[38] *See Conroy v. Vilsack*, 707 F.3d 1163, 1179 n.6 (10th Cir. 2013) ("Our case law makes clear that a district court abuses its discretion only when it both denies a party leave to file a surreply and relies on new materials or new arguments in the opposing party's reply brief." (citations omitted)).

[39] *See* 42 U.S.C. § 7413(a).

"generally view the sufficiency of a NOV liberally."[40]  Actual notice of the violations is sufficient, even if formal written notice is not provided.[41]  The purpose of the notice provision, aside from notifying the violator, is to provide the state an opportunity to "enforce its own implementation plan before the EPA steps in."[42]  And "the notice requirement is not intended to be construed in a way that would make EPA enforcement more difficult."[43]

Although EPA agrees that the notice provision in § 7413(a) is a precondition to suit, it disagrees that it is jurisdictional, arguing that there is no Tenth Circuit authority for this proposition.  Because it is not jurisdictional, EPA contends that considering matters outside the pleadings is not permitted and, therefore, the Court must take as true its allegation in Paragraph 15 of the FASC that Plaintiffs provided notice of the violations alleged therein to Defendant more than 30 days before filing that pleading and deny Defendant's motion under Rule 12(b)(6).

A few district courts have explicitly characterized the notice requirement in § 7413(a) as jurisdictional; however, EPA is correct that there is no binding authority from the Supreme Court or Tenth Circuit that characterizes it as a jurisdictional requirement.[44]  Notably, Defendant does not move to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  The Court agrees with EPA that there is no consistent or binding authority providing that the notice provision in § 7413(a) is a jurisdictional prerequisite to suit.  As discussed, when considering a

---

[40] *United States v. Duke Energy Corp.*, 5 F. Supp. 3d 771, 779 (M.D.N.C. 2014) (alteration in original) (quoting *United States v. AM Gen. Corp.*, 808 F. Supp. 1353, 1362 (N.D. Ind. 1992), *aff'd*, 34 F.3d 472 (7th Cir.1994)) (citations omitted); *see also United States v. LTV Steel Co.*, 116 F. Supp. 2d 624, 632 (W.D. Pa. 2000); *United States v. BP Expl. & Oil Co.*, 167 F. Supp. 2d 1045, 1051 (N.D. Ind. 2001).

[41] *United States v. Chevron U.S.A., Inc.*, 380 F. Supp. 2d 1104, 1109 (N.D. Cal. 2005) (quoting *BP Expl. & Oil Co.*, 167 F. Supp. 2d at 1051); *United States v. B & W Inv. Props.*, 38 F.3d 362, 366 (7th Cir. 1994).

[42] *B & W Inv. Props.*, 38 F.3d at 366 (citation omitted); *Chevron U.S.A., Inc.*, 380 F. Supp. 2d at 1110.

[43] *Chevron U.S.A., Inc.*, 380 F. Supp. 2d at 1110 (citing S. Rep. No. 101-228, at 361–62 (1990)).

[44] *AM Gen. Corp.*, 808 F. Supp. at 1362; *LTV Steel Co.*, 116 F. Supp. 2d at 632; *United States v. Louisiana-Pac. Corp.*, 682 F. Supp. 1141, 1155 (D. Colo. 1988); *United States v. Pan Am. Grain Mfg. Co.*, 29 F. Supp. 2d 53 (D.P.R. 1998).

motion under Rule 12(b)(6), the Court is not permitted to consider matters outside the pleadings with certain limited exceptions. Therefore, the Court should not consider the NOV submitted with Defendant's motion to determine whether Plaintiffs state a plausible claim for relief. Assuming the facts alleged in the FASC are true, Plaintiffs have stated a plausible claim, including that they met the notice precondition under the statute.

Assuming, *arguendo*, that the notice requirement is jurisdictional and that the Court can therefore consider the NOV submitted by Defendant in support of its motion,[45] the Court would conclude that the NOV was sufficient to put Defendant and the State on notice of the gasoline loading rack reporting violations alleged in Count 17. As stated above, the Court should liberally construe the notice provision in § 7613(a). Paragraphs 86–90 of the NOV, which was issued on November 19, 2021, detail EPA's claim for "Failure to Report Gasoline Loading Rack Emissions in Violation of Part 63 NESHAP Subpart CC, the 2017 Title V Permit and K.A.R. § 28-19-750."[46] That quoted language is the EPA's heading in the NOV for this alleged violation, which is in bold font. Specifically, paragraph 90 provides:

> As set forth in Paragraph 87 above, during approximately 25 days in December 2020, CRRM failed to comply with the emissions standard in Part 63 NESHAP Subpart CC, 40 C.F.R. § 63.422(b) (requiring compliance with Subpart R, 63.422(a) through (c) and (e), the 2017 Title V Permit § X, Att. D and KAR § 28-19-750. In reporting these exceedances, CRRM: failed to include the monitoring data for the days on which exceedances or failures to maintain occurred and failed to include a description and timing of the steps taken to repair or perform maintenance on the vapor collection and processing system or the CMS, as required by 40 C.F.R. § 3.428(h)(1). In addition, CRRM failed to keep a legible, up-to-date, readily accessible record of the continuous monitoring

---

[45] *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001) (explaining that when the Court reviews a challenge to the facts upon which subject matter jurisdiction is based, it may consider matters outside the pleadings without converting to a summary judgment motion).

[46] Doc. 93-3 at 13–14.

17

> data, including the date and time intervals during which loadings of gasoline cargo tanks, or occurred or, alternatively, failed to legibly record the operating parameter data only during such loadings, as required by 40 C.F.R. § 63.428(c)(1). These reporting failures constitute violations of Part 63 Subpart CC, 40 C.F.R. § 63.655 and Table 4 (requiring compliance with Part 63 NESHAP Subpart R, 40 C.F.R. §§ 63.428(h)(1) and (c)(1)) and Part 63 NESHAP Subpart CC Table 4), the 2017 Title V Permit § X Att. D, and KAR, § 28-19-750.[47]

Defendant complains that this notice does not match the allegation in Count 17 because it does not state that Defendant wholly failed to report alleged exceedances of the gasoline loading rack emission standards. Instead, it simply alleges that the reported exceedances failed to include certain information required by the regulations and 2017 Permit. The Court disagrees.

The bolded title that precedes paragraph 88 explicitly alleges a "Failure to Report Gasoline Loading Rack Emissions," and paragraph 90 placed the State on notice of its position that during approximately 25 days in December 2020, Defendant failed to properly report violations of Part 63 NESHAP Subpart CC, 40 C.F.R. § 63.422(b), the 2017 Title V Permit § X, Att. D and KAR § 28-19-750, pertaining to the gasoline loading rack emission standards. The NOV alleges that, among other things, Defendant failed to include monitoring data, descriptions, and other information required in the semi-annual reports. The NOV states that EPA considers these reporting failures to be violations of the federal and state regulations, and the 2017 Permit.

Therefore, even if the notice provision in § 7413(a) is considered jurisdictional, the Court finds that the NOV, when liberally construed, provided Defendant and the State with sufficient

---

[47] *Id.*

18

notice of the EPA's position that Defendant failed to comply with the reporting requirements that applied to its December 2020 exceedances of the gasoline loading rack emission standards.[48]

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss (Doc. 91) is **granted in part and denied in part**. The State's civil penalty demands under the KAQA in Counts 1 through 17 are dismissed. The motion is otherwise denied.

**IT IS SO ORDERED.**

Dated: October 3, 2022

S/ Julie A. Robinson<br>JULIE A. ROBINSON<br>UNITED STATES DISTRICT JUDGE

---

[48] *Accord LTV Steel Co.*, 116 F. Supp. 2d at 632–33 (finding notice provision met where the EPA's NOV identified "the plant in violation; the regulation being violated; and the specific emissions sources at the plant in violation").